**BUTTES GAS & OIL CO., Appellee,**

v.

**The WILLARD PEASE DRILLING CO., Appellant.**

**No. 72-1106.**

United States Court of Appeals, Tenth Circuit.

Sept. 25, 1972.

Richard M. Huckeby, Denver, Colo. (Jerry W. Uhrlaub, Grand Junction, Colo., with him on brief), for appellant.

Ted J. Gengler, Denver, Colo. (Raymond J. Gengler, Denver, Colo., with him on brief), for appellee.

Before LEWIS, Chief Judge, and SETH and McWILLIAMS, Circuit Judges.

SETH, Circuit Judge.

This action was brought by the operator under a unit agreement contemplating the development for oil and gas of an area in Utah. The defendant was a working interest owner and a party to

the operating agreement. Defendant was also a drilling contractor who was engaged to drill the well in question.

By its complaint the plaintiff-operator sought to recover from the defendant fifty per cent of the cost incurred by the plaintiff in drilling the first or test well pursuant to the unit agreement. This fifty per cent was the percentage interest of defendant in the test well, and was the percentage the unit agreement specified that defendant would pay of the cost of such well. The defendant had refused to pay the amount billed.

The case was tried to a jury and plaintiff recovered a judgment in the amount of $111,625.00 together with interest. The defendant has taken this appeal.

The defendant-appellant urges that the trial court was in error in not limiting defendant's liability to fifty per cent of $149,450.00 which was the total amount stated as the expected cost of the well in an Authorization For Expenditure (AFE) prepared by plaintiff and signed by defendant and others. The defendant also urges error in regard to the instructions given to the jury, and as to those refused.

The parties, with others, executed the unit agreement and unit operating agreement covering the location concerned, and the plan for the testing and development of the area. There is no issue as to the provisions of the operating agreement, and that it designated plaintiff as the operator with authority to incur expenses in carrying out an operation authorized by the agreement. The agreement specifically provided for the initial or test well with which we are here concerned. It provided for the time the well was to be drilled, its location, depth (with further drilling as the operator shall direct), and stated how the cost would be shared by the plaintiff (37½ per cent), the defendant (50 per cent), and a third party (12½ per cent). Thus the well was clearly an authorized operation, one under the operating agreement. The agreement does make provision for AFE's pursuant to sections using the term "estimated costs."

The operating agreement also provided the unit operator, the plaintiff, when authorized to conduct a drilling operation was also authorized to "make all reasonable and necessary expenditures in connection therewith."

As indicated above, before the test well was commenced, the plaintiff circulated an Authorization For Expenditure, athough not required for the test well, and insisted it be signed before drilling started. This form gave the well location, expected depth, and specified some thirty to thirty-five operations or services, and total completion cost with the expected cost for each which made up the drilling cost to be incurred. The total of these items on the AFE was $149,450.00 for all parties to the agreement.

The total cost for which these parties were ultimately billed was $238,534.28. The jury reduced this billed amount somewhat, apparently for certain salaries of plaintiff's employees charged to the job, and entered judgment against defendant for fifty per cent thereof.

The plaintiff argues that the well was drilled as provided in the agreements, that the costs were established, that they were reasonably incurred, and that the operating agreement expressly provided that the defendant pay fifty per cent thereof. Further it urges that the operating agreement was not modified.

The defendant argues that the AFE became a part of the agreements, and expenses were not to be incurred beyond the amount therein stated. Further that defendant was not expressly notified by plaintiff that the expenses were exceeding the AFE before the actual billing was made.

The plaintiff further argues that defendant was engaged as an independent contractor to drill the well by the plaintiff in its capacity as the unit operator. Thus the defendant knew of the drilling and service work being done at the drillsite.

This drilling contract is part of the record, and it provides that the Willard Pease Drilling Company is to drill the well with equipment and labor it provides, and that it shall have authority to direct and control the drilling as an independent contractor. The testimony however indicates the operator may have exercised more direction. The contract further provides for the rate of compensation (on a day-work basis) and for billing. The drilling services so provided and billed by the defendant totalled $76,000.00 and so exceeded the drilling costs stated in the AFE ($48,000.00) by a substantial amount. It is apparent that the defendant thus knew that the drilling costs were greatly exceeding the AFE figure. This, of course, was only one aspect or portion of the well cost, but it was a basic one and a substantial one. Other expenses by way of special services were incurred by plaintiff during the course of the drilling. Defendant received one or two billings from plaintiff during the drilling period. The final or third billing to defendant was about three months after the well was completed. In view of these circumstances and the other evidence it must be concluded that the defendant had knowledge of the fact that the well costs were greatly exceeding the AFE figures, and consequently, in the absence of any objection on its part, it cannot now be heard to argue that the AFE was not a limitation on its billing for drilling costs but was a limitation on total costs. This relationship to, knowledge, and participation by defendant in the creation of the expenses leads us to hold that the trial court was correct in its rulings on the significance of the AFE on motion for directed verdict, for a new trial, and by refusal of defendant's tendered instruction limiting its liability to fifty per cent of the AFE amount. The defendant was certainly in a different position than is the usual nonoperator in regard to the issues before us. This being so, it is not necessary to pass on the "usual" legal impli-cations, if there be such, of an Authorization For Expenditure.

Since the AFE did not here modify the operating agreement, and it was clear and unambiguous, the intention of the parties as to the division of expenses is likewise clear. Cox v. Pearl Investment Co., 168 Colo. 67, 450 P.2d 60; Socony Mobil Oil Co. v. Humble Oil & Refining Co., 387 F.2d 155 (10th Cir.).

The defendant further argues that several of its requested instructions were refused by the trial court and this constitutes error. We find no error in the refusal of instructions by the trial court nor in the instructions given when taken as a whole. The theories of the parties pleaded and as to which sufficient evidence has been introduced were covered by the instructions given.

Affirmed.