**RESORT CAR RENTAL SYSTEM, INC., Plaintiff-Appellant,**

v.

**CHUCK RUWART CHEVROLET, INC., et al., Defendants-Appellees.**

**No. 74-1665.**

United States Court of Appeals, Tenth Circuit.

Argued May 21, 1975.

Decided July 10, 1975.

Edwin S. Kahn, Raul N. Rodriguez, Christopher N. Sommer, Denver, Colo., for plaintiff-appellant.

Richard S. Hays, John S. McGuire, Denver, Colo., for defendants-appellees.

Before MURRAH, HILL and DOYLE, Circuit Judges.

MURRAH, Circuit Judge.

Resort Car Rental System, Inc., a Delaware corporation, contracted for the stock-for-stock purchase of Metropolitan Leasing Inc., from its owners, Ruwart Chevrolet, a Colorado corporation, and certain named stockholders, residents of Colorado and Louisiana (the Sellers). Following the consummation of the purchase, Metropolitan failed to collect a substantial amount of its accounts receivable, lost its previous financing source, and went out of business. Resort then sued the Sellers for actual and punitive damages for breach of contract, common law fraud, and violation of federal and Colorado state securities laws, alleging federal subject matter jurisdiction over the federal statutory claims and pendent and diversity jurisdiction over the state and common law claims. 15 U.S.C. § 78j [1]; 28 U.S.C. § 1332. After trial, the court denied all of Resort's claims, holding that the Sellers had breached no contractual or statutory duty, and granted one of Sellers' counterclaims to the effect that the purchase contract required Resort to issue additional shares of its stock to the Sellers because of the decline in its value sometime after the consummation of the purchase.

There is no quarrel with the basic facts, as stated by the trial court. Metropolitan leased cars from Genway, its financing source, and in turn rented these cars to retail customers. Resort, which owned a number of similar car rental agencies in other parts of the country, sent its chief executive Bell to Denver to negotiate for the acquisition of Metropolitan in July, 1969. At that

---

1. The case seems to have been made to turn on the federal securities laws, 15 U.S.C. § 78j.

In any event this section of the Statute is the most favorable to the stated claims.

time he met with the Sellers briefly, and they agreed in principle to a stock-for-stock exchange. The Sellers then told Bell that full financial information would be provided upon request, and later the same month, their accountant wrote to Bell enclosing Metropolitan's unaudited June 30 financial statements and indicating that Metropolitan was being offered for sale at $100,000 with a liability and accounts receivable guaranty. Bell responded the next month with a written offer of 10,000 shares of Resort stock, to be registered and guaranteed at $10 per share. Within ten days, the Sellers sent Bell copies of Metropolitan's monthly leasing reports from Genway as well as authorization for Resort to obtain further financial information from Genway.

When the contract was drafted, the number of Resort shares to be exchanged was reduced from 10,000 to 7,500 due to a deterioration in Metropolitan's financial condition as revealed by updated unaudited financial statements of August 31. The contract provided in presently material part:

> "3(e) All financial statements attached hereto are unaudited and reflect the transactions in the books and records. All assets reflected are guaranteed to be worth not less than reflected in these financial statements and books and records and all liabilities are not more than reflected in these financial statements and books and records. . . . The Company [Metropolitan] has no liabilities or obligations except those disclosed on the financial statements attached hereto as an exhibit or those incurred in the normal and regular conduct of its business since the date of said financial statements, except a liability of not more than $700 to Advance Neon Sign Co. for a neon sign containing the word 'Chevway'."

The contract further provided that one-half of the Resort stock to be exchanged (3,750 shares) would be placed in escrow pursuant to the guaranty of Metropolitan's accounts receivable:

> "Company [Metropolitan] shall have the sole and exclusive right to collect in the normal course of its business its accounts receivable existing on the closing date. If any of such accounts remain uncollected on or after July 1, 1970, [10 months after the closing date] Resort shall have the right at any time after July 1, 1970, and before December 1, 1970, to cause Company [Metropolitan] to assign all or any portion of the then uncollected accounts receivable to Sellers jointly without payment by Sellers, and Resort shall have the right to make a stock withdrawal from the escrow for the face amount of the receivables not collected and assigned to Sellers."

The unaudited financial statements of June and August as well as copies of the print-outs of the monthly leasing reports were attached to the contract. These monthly reports showed the number of vehicles leased by Metropolitan and the scope of its obligation to Genway. Neither the financial statements nor the monthly reports indicated that at the time of the closing, Metropolitan was two months overdue in its payments to Genway. Footnote 2 of the June and August financial statements, however, outlined the general terms of Metropolitan's leasing relationship with Genway and specifically noted that "These [leased] vehicles, and [Metropolitan's] contingent liability [to Genway] arising from the lease agreement, are not recorded on the books of Metropolitan Leasing, Inc."

About three months after the September 31 closing, Genway told Resort that it must pay Metropolitan's overdue balance for the two months prior to the closing. Resort first expressed surprise then responded by acknowledging the debt and later settling it. Genway furthermore told Resort that since it was not a Chevrolet franchisee, Genway could not supply further financing for Metropolitan or Resort. Later, acting under the contract, Resort assigned $40,000 face amount accounts receivable back to the Sellers as uncollected, and

retrieved all of its 3,750 shares from escrow (apparently valued at about $15,000, including credits, leaving a claimed accounts receivable deficiency of over $25,000). Resort never registered its stock, the price of which fell to $1 within a year.

Granting the Seller's counterclaim for additional Resort shares, the trial court indicated that the precise number of shares due would be determined by the parties or at a subsequent hearing. The court apparently construed the contract to guarantee accounts receivable to the extent of the escrow account, but the court could not determine whether the guaranty went further: "Whether there should be an offset for shares to be recovered by Resort because of the uncollected accounts receivable under subparagraph 3(e) can not be determined on the present record." The court found no inaccuracies in the financial statements and books and records. As to the effect of the claims under the securities laws, it was held that the Sellers had reasonably disclosed all material facts in connection with their sale of Metropolitan stock and that, in any event, Resort was foreclosed from recovery by lack of due diligence as purchaser. Resort appealed from the judgment denying its claims, arguing that the contract was misconstrued, the securities laws misapplied, and the evidence misinterpreted.

■ In reviewing the trial court's construction of the contract, it should be noted that ordinarily the construction of a contract is a question of law for the court. Unless the words used by the parties to express their agreement are found to be ambiguous in some material respect, it is the province and duty of the court to give them legal effect according to their plain, ordinary and popular meaning. Socony Mobil Oil Co. v. Humble Oil & Refining Co., 387 F.2d 155, 157 (10th Cir. 1967). See also Buttes Gas & Oil v. Willard Pease Drilling Co., 467 F.2d 281, 283 (10th Cir. 1972); C. H. Codding & Sons v. Armour and Co., 404 F.2d 1, 8 (10th Cir. 1968); Evensen v. Pubco Petroleum Corp., 274

F.2d 866 (10th Cir. 1960). Corbin on Contracts § 542 pp. 106–107, § 554 pp. 224–225 (1960). Viewed within its four corners and in the context of the undisputed relevant facts, we think the contract is by its very terms too plain to justify extrinsic proof of its meaning. In plain and simple language which cannot be misunderstood, the Sellers "guaranteed" that "all assets reflected are . . . worth not less . . . and all liabilities are not more than reflected in these financial statements and books and records." In the absence of some articulated exception or qualification, this can only mean that the Sellers are liable for any deficiencies in the stated amount of assets, including accounts receivable. While the escrow was intended to insure performance of the guaranty with reference to accounts receivable, there is nothing in the contract to indicate or from which it can be implied that the liability assumed was limited to the amount in escrow. Indeed, the contract specifically provided:

"Resort may satisfy any breaches of the warranties, representations and guarantees by taking stock from said escrow . . . provided, however, to the extent that the stock in the escrow is not sufficient to satisfy said breaches and to the extent that breaches have not in fact been satisfied from the escrow or first become known after the escorw [sic] terminates, Sellers shall be and remain jointly and severally liable for said breaches."

We hold, therefore, that Sellers are liable to Resort for the uncollected amount of the listed accounts receivable. Since, however, the liability to Genway was expressly excepted from the financial statements and books and records, it is not covered by the guaranty, and the Sellers have no contractual liability arising from it.

■ Resort alleged other inaccuracies in the financial statements as compared with the books and records: (1) overstatement of an asset for prepaid interest, insurance and licenses in the amount

of $1,297; (2) understatement of liabilities for interest accrued in the amount of $693; and (3) gross miscalculation of the reserve for doubtful accounts. The $693 discrepancy was admitted to be an immaterial variance from the books and records. The other alleged discrepancies are simply matters of computation, disputed by the accountants testifying at trial and conclusively resolved by the court. The result is not clearly erroneous and is binding here. See Mitchell v. Texas Gulf Sulphur Co., 446 F.2d 90 (10th Cir. 1971).

This brings us to the question whether the securities laws imposed duties to disclose beyond those which we have found in the contract itself. The federal statute invoked by Resort, Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5, provide, in pertinent part, that it is unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . ." This and other courts have uniformly emphasized the need to interpret this rule flexibly so as to prevent fraud. Stevens v. Vowell, 343 F.2d 374 (10th Cir. 1965); Clegg v. Conk, 507 F.2d 1351 (10th Cir. 1974). And there is no need to prove the elements of common law fraud, including positive proof of reliance; nor is there room for the doctrine of caveat emptor. Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). Nonetheless, to grant relief under 10b–5, we have consistently required that the defendant act with a degree of scienter or intent beyond mere negligence and that the plaintiff act in good faith and reasonably under the circumstances. Financial Indus. Fund, Inc. v.

McDonnell Douglas Corp., 474 F.2d 514, 517 (10th Cir. 1973); Mitchell v. Texas Gulf Sulphur Co., supra. The Colorado securities laws are to the same effect. 1973 C.R.S. §§ 11–51–117, 11–51–125.

We have seen that Metropolitan's liability to Genway was expressly omitted from the financial statements and books and records by the terms of Footnote 2. If the liability was deemed material, the Sellers had notice and were specifically authorized to inquire concerning it.[2] The record does not indicate that any such inquiry was ever made. Moreover, the monthly leasing reports, also attached to the contract, showed this liability generally by listing the current book value of Genway cars then leased to Metropolitan. We do not think that there is any omission to state a material fact. Cf., Metro-Goldwyn-Mayer, Inc. v. Ross, 509 F.2d 930 (2d Cir. 1975) (where the purchaser was not alerted by the seller that a specific item of information was omitted and purchaser's access to this information would have required voluminous and meticulous research).

Having concluded that the contract fully guarantees the collectibility of the accounts receivable as stated on the financial statements, we hold that the Sellers are liable to Resort for the accounts receivable deficiency remaining after exhaustion of the escrow account. On remand, the trial court should determine the exact amount of this deficiency as well as the number of Resort shares due to Sellers on their successful counterclaim. We also leave for the trial court the reserved question as to how Sellers' liability to Resort is to be satisfied—whether by offset in Resort shares due to Sellers or by other means such as cash payment. Pending disposition there, it is premature to consider Resort's claim for attorney's fees under

---

2. By letter of August 13, the Sellers advised Genway that Metropolitan was being sold and authorized Genway, upon request of Resort, to furnish any financial information with reference to the units in Metropolitan's fleet and the final payoff figure. A copy of that letter was sent to Resort, together with notice that print-outs of the monthly leasing reports would follow.

contractual provisions which are activated only by a finding of breach.

Affirmed in part; reversed in part. Remanding for a hearing consistent with the findings herein.