No. 22220.

WILLARD C. COX AND AUDREY M. COX *v.*
PEARL INVESTMENT COMPANY.
(450 P.2d 60)

Decided February 3, 1969.

68

KAYNE and WATSON, for plaintiffs in error.

JANUARY, GILCHRIST, BLUNK & JOHNSON, GEORGE E. JOHNSON, for defendant in error.

*En Banc.*

Opinion by MR. JUSTICE HODGES.

THIS is a negligence case which terminated in the trial court with a summary judgment in favor of the defendant on a showing that a purported release had been executed by the plaintiffs in favor of a' joint tort-feasor. The common law rule of law that the release of one tort-feasor releases all others who may have liability was applied by the trial court.

As plaintiffs in the trial court, Mr. and Mrs. Cox sought recovery of damages for injuries which Mrs. Cox sustained when she fell on property owned by the defendant Pearl Investment Company. The plaintiffs' com-

plaint acknowledges that Goodwill Industries was a tenant of the defendant. However, it alleges in the alternative that the location of the fall was and was not part of the premises leased by the defendant to Goodwill Industries. In either event, the complaint charges only the defendant with negligence. When the summary judgment motion was considered by the trial court, it was shown that the tenant, Goodwill Industries, had previously paid the plaintiffs $2500 in consideration of the plaintiffs' execution of a document entitled "Covenant Not to Proceed with Suit."

The only affirmative defenses contained in the defendant's answer were contributory negligence and assumption of risk. After the answer was filed, defendant moved for summary judgment under R.C.P. Colo. 56 on the ground that the plaintiffs had given a release to Goodwill Industries which also released their claim against the defendant as a joint tort-feasor.

The defendant's summary judgment motion was granted by the trial court and was premised on the finding that:

"The release of Goodwill Industries operates as a release of all tort-feasors, including the defendant herein, Pearl Investment Company."

██ The plaintiffs urge reversal on two grounds: they first contend that since the affirmative defense of release was not pleaded in the answer as required by R.C.P. Colo. 8(c), it was thereby waived by the defendant and that the defendant could not thereafter assert release as a ground for summary judgment. This assignment of error is without merit. If the summary judgment motion had not been granted and had the defendant wished to persist in asserting the defense of release, the trial court would have been required to permit defendant to amend its answer to include this defense. As this record is postured, the inclusion of the affirmative defense of release in the summary judgment motion is treated as being incorporated in the defendant's answer

for the purpose of technical compliance with R.C.P. Colo. 8(c).

■■■ The plaintiffs have not been prejudiced in any way because the affirmative defense of release was not included in the defendant's answer. Furthermore, by arguing the merits of defendant's motion for summary judgment without raising this objection in the trial court as to the manner in which this affirmative defense of release was asserted, the plaintiffs have effectively waived any objection they may have had to this procedure. *Kepley v. People ex rel. Everson,* 76 Colo. 233, 230 P.804; see also *Dow v. Shoe Corporation of America,* 276 F.2d 165. Also, our review of this record indicates that the plaintiffs did not at any time raise this objection in the trial court nor move for a reconsideration of the trial court's summary judgment on the ground that the defendant could not initially raise the affirmative defense of release by its motion for summary judgment. Therefore, even if this assignment of error had any substance, it would not be subject to review by this court. It is a basic principle of appellate procedure firmly adhered to by this court that unless the trial court has been given an opportunity to correct an alleged error, it will not be considered on review, unless it involves a plain error which deprives a litigant of fundamental rights. *Cacic v. Cacic,* 164 Colo. 103, 432 P.2d 768, *Rivera v. Queree,* 145 Colo. 146, 358 P.2d 40, *Horlbeck v. Walther,* 133 Colo. 19, 291 P.2d 688, *McMullin v. Magnuson,* 102 Colo. 230, 78 P.2d 964, *Posig v. Zelish,* 100 Colo. 253, 67 P.2d 70.

■ The second assignment of error is that the summary judgment motion of the defendant should not have been granted because a genuine issue of material fact remained unresolved. Plaintiffs claim there was nothing before the trial court to show that Goodwill Industries was a joint tort-feasor with the defendant. R.C.P. Colo. 56 provides that a summary judgment may be rendered only if the pleadings, depositions and ad-

missions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact. Unless the joint tort-feasor relationship between Goodwill Industries and the defendant was shown to have existed, there was no basis upon which the trial court could rule that the purported release was effective as a bar to the plaintiffs' action against the defendant. This is the plaintiffs' contention and we agree that the joint tort-feasor relationship is a pivotal issue here. However, we do not agree with the claim of the plaintiffs that this relationship was not sufficiently shown for the purpose of this summary judgment motion. By not answering the defendant's request for admissions, the relevant subject matters of these requests were deemed admitted by the plaintiffs. R.C.P. Colo. 36. For the purpose of this summary judgment motion, it was therefore admitted that plaintiffs had made a claim for damages resulting from the fall against both Goodwill Industries and the defendant and that thereafter, the plaintiffs received payment of $2500 from Goodwill Industries in exchange for their execution of a document in favor of Goodwill Industries entitled "Covenant Not to Proceed with Suit." This, in our view, constitutes an adequate showing of the joint tort-feasor relationship for the purpose of this summary judgment motion.

The plaintiffs' second assignment of error, however, does bring into focus another important issue concerning the legal effect to be given to the "Covenant Not to Proceed with Suit" involved here. The trial court denominated it a release and, without ascribing any dignity to the expressed words that the plaintiffs reserved "the right to sue any other person or persons against whom they may have or assert any claim on account of damages arising out of the above described accident," ruled that it therefore barred any action against the defendant as a joint tort-feasor.

Although *Price v. Baker*, 143 Colo. 264, 352 P.2d 90 supports the trial court, we no longer deem it advisable

to further impose on our body of law the harshness and rigidity of the rule and rationale of *Price,* or any predecessor cases, including *Morris v. Diers,* 134 Colo. 39, 298 P.2d 957, which seemingly at least appears to support the result attained in *Price.* In our present analysis of this issue, we are drawn toward only one conclusion. We can no longer countenance the continuation of a rule of law which is not only harsh and illogical, but which gives refuge and absolution to wrongdoers by depriving a litigant under these circumstances of probable just and full compensation for his injuries caused by wrongdoers. It is not possible to visualize any reasonable or compelling justification for persisting in the application of this harsh and unrealistic rule except on the basis of ancient formalisms, the reasons for which no longer prevail. On this general premise, the well-reasoned and documented dissent in *Price* was predicated. It was therein stated: "The numerous cases holding contrary to the majority ruling illustrate more fully the absence of any basis, logical, equitable or historical, in support of the ruling. A study of these decisions establishes that the majority decision represents a diminishing minority viewpoint."

In *Price,* we declared "this state has long followed the universal rule that the release of one joint tort-feasor is a release of all." We hereby confirm this to be still the rule in Colorado. Also, we agree with the proposition that a joint tort-feasor is not ipso facto released by a covenant not to sue. We do, however, now state that the instrument involved in *Price v. Baker,* which is substantially identical to the writing involved in the case at bar, was improvidently interpreted to be an absolute and full release of all joint tort-feasors.

The manifest intent of the parties to a contract should always be given effect unless it be in violation of law or public policy. This is fundamental in contract law. Where a contract has the effect of releasing one joint tort-feasor but expressly reserves the right to sue others who may be liable, it should not in law be

treated otherwise. The expressed reservation in this instrument of the right to sue other joint tort-feasors evinces a clear-cut manifestation that the plaintiffs were not receiving full compensation; and if this is borne out, their right to bring an action against others who were the cause of their damages should not be foreclosed. The danger of overcompensation or double compensation is no excuse for barring a claim against joint tort-feasors. Obviously, no court would permit the accomplishment of this possible contingency. And certainly, the nonsettling joint tort-feasor is not prejudiced, but rather, he is benefited for he would be entitled to have the amount of the judgment reduced by the amount paid by his co-tort-feasor.

Nearly all jurisdictions now follow the rule that the express intent of the parties to an instrument which reserves the right to sue other joint tort-feasors shall be given effect. *Gronquist v. Olson,* 242 Minn. 119, 64 N.W.2d 159 is typical of the rationale which applies the rule that the intent of the parties and the sufficiency of the satisfaction are issues for the fact finder. The rule of *Gronquist* requires a manifestation in the document of an intention not to release remaining joint tort-feasors, and although it places emphasis on the intention of the parties, it would not allow a party to impeach in court an unequivocal release.

The rule that the reservation of right shows the intention of the parties not to release the non-settling defendant and that such a document should be considered a covenant not to sue rather than an absolute release are numerous. They are collected in the notes of 50 A.L.R. 1099, 66 A.L.R. 214, 104 A.L.R. 862, and 124 A.L.R. 1316. To be particularly noted is the early case of *Matheson v. O'Kane,* 211 Mass. 91, 97 N.E. 638, 39 L.R.A. (N.S.) 475. The facts therein are quite similar to the facts of the instant case in that the released parties were authorized to plead the instrument in bar to any action filed by the plaintiffs. It was held that this did not con-

stitute a release of other defendants and further stated: ". . . But where it is evident that the consideration paid to the plaintiff was not intended to be full compensation for his injuries, and the agreement signed by him although in a form of a release was clearly intended to preserve the liability of those who were not parties to it. Many of the courts have sought to give effect to that intention by construing the agreement as in legal effect as covenant not to sue and not a technical release."

4 Restatement, Torts § 885 which is modeled after numerous cases like *Matheson, supra,* provides that a release will be construed as a covenant not to sue where the right to proceed against the remaining tort-feasors is expressly reserved. This section emphasizes the importance of the expressed intent of the contracting parties.

In the supplemental brief of the defendant, it is urged that *Price, supra,* establishes the rule in Colorado that the document involved there which is essentially identical to the instrument here is an absolute release of all joint tort-feasors and therefore, should not now be repudiated under the doctrine of stare decisis. This doctrine is assiduously followed by this court. However, when, as here, a prior decision is adverse to the rules of fundamental law and initiates a harsh and unrealistic rule, we believe it becomes incumbent upon us at the first opportunity presented to make a necessary change.

Accordingly, the judgment is reversed and the cause remanded to the trial court for further proceedings not inconsistent with the views expressed herein.