BEBO CONSTRUCTION COMPANY, a
Colorado corporation, Petitioner,

v.

MATTOX & O'BRIEN, P.C., a Colorado
corporation; Judith Ward Mattox; Chris
M. Darby; and Excell Development Con-
struction, Inc., a Delaware corporation,
Respondents.

No. 98SC608.

Supreme Court of Colorado,
En Banc.

Dec. 6, 1999.

McDermott & Hansen, Gerald P. McDermott, William J. Hansen, Denver, Colorado, Attorneys for Petitioner.

Warren, Mundt & Martin, P.C., James A. Mundt, Colorado Springs, Colorado, Attorney for Mattox & O'Brien, P.C., Judith Ward Mattox, and Chris M. Darby, Respondents

Holland & Hart, LLP, Edward H. Flitton, III, David S. Prince, M. Terry Fox, Colorado Springs, Colorado, Attorneys for Excell Development Construction, Inc., Respondent.

Chief Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to review an unpublished opinion of the court of appeals, *Bebo Construction Co. v. Mattox & O'Brien, P.C.*, No. 96CA2179 (Colo.Ct.App. July 2, 1998). The petitioner, Bebo Construction Company (Bebo), appeals the dismissal of its attorney malpractice action against respondents Mattox & O'Brien, P.C., individual attorneys within that law firm (collectively, with the firm, as "Mattox"), and Excell Development Construction, Inc. (Excell). The state hired Bebo to act as general contractor in the reconstruction of the Stroh Road bridge. After the bridge was completed, an inspection revealed the improper installation of certain anchor bolts on the guardrails of the bridge. As a result of these deficiencies, Bebo was debarred by the Colorado Department of Highways (CDOH), thereby precluding Bebo from participating in state construction projects for two years. The debarment effectively put Bebo Construction Company out of business.

Following the debarment, Bebo retained Mattox to handle its legal affairs regarding the Stroh Road bridge. Mattox filed a negligence action against the project engineer, BRW, Inc. (BRW), on behalf of Bebo, but the claims were dismissed because Mattox failed to comply with the applicable statute of limitations. Thereafter, Bebo filed a legal malpractice action against Mattox, arguing that it was damaged by Mattox's failure to comply with the statute of limitations. The court of appeals determined that Mattox's failure did not cause harm to the plaintiff because the doctrine of collateral estoppel[1] would have

---

1. Collateral estoppel is also, and more modernly, known as issue preclusion; res judicata is re-

barred examination of BRW's misconduct in the underlying negligence suit against BRW. Since the underlying claim would have been unsustainable, Bebo could not prevail on the malpractice action. Bebo asserts that the court of appeals improperly applied the doctrine of collateral estoppel in evaluating the propriety of the underlying action. We agree. Accordingly, we reverse the court of appeals' judgment and remand the case with directions.

## I.

In March 1987, petitioner Bebo contracted with the Colorado Department of Highways to act as general contractor in the replacement of the Stroh Road bridge in Douglas County. BRW, in its capacity as project manager, designed the project, and oversaw and inspected the construction of the bridge which was given final acceptance by CDOH in September 1987.

In March 1988, a CDOH engineer discovered problems with the guardrail anchor bolts, such that their installation met neither federal construction standards nor contractual specifications. Subsequent inspection would reveal that approximately 20% or more of the anchor bolts were deficient and that these deficiencies were disguised by various means including the gluing of threaded rods to face plates instead of projecting those rods through the concrete. BRW inspected the bridge and issued a report documenting the problems with the defective anchor bolts.

Bebo asserts that during the discovery period of subsequent litigation against CDOH, discussed *infra*, Bebo learned that BRW engaged in improper activity related to the installation of the deficient anchor bolts. Further, Bebo claims that BRW's report to the CDOH following the discovery of the inadequacies improperly placed all blame on Bebo for the anchor bolt problems and falsely accused Bebo of fraudulently concealing the problems from BRW. In its Answer Brief, Mattox did not challenge the existence of misconduct on the part of BRW; instead,

Mattox focused on the time at which Bebo first learned of the misconduct.

In August 1988, CDOH commenced a debarment action against Bebo predicated upon the anchor bolt deficiencies and the concealment of those deficiencies. Mattox did not represent Bebo in that action. At the debarment proceeding, the ALJ found that two regulatory bases to support debarment existed: (1) "the person ... has demonstrated wrongdoing reflecting a lack of integrity in ... performing public projects," and (2) "[t]he CDOH [engineer] has reasonable grounds to believe and finds that the public health, welfare or safety imperatively requires such action." At the conclusion of the proceeding, the agency instituted a two year debarment, precluding Bebo from participating in any state construction projects or related activities for that time period.

In August 1989, Bebo entered into an agreement with respondent Mattox to handle legal matters related to the bridge project. Bebo also signed an agreement with Mattox to allow respondent Excell to assist in the preparation of the case. Two legal actions conducted by Mattox, on behalf of Bebo, concern us in this case.

In the first action, Mattox filed a complaint against CDOH asserting a number of claims, primarily involving delay damages related to the bridge project. CDOH counterclaimed for breach of contract and fraud based upon the defective anchor bolts. Mattox petitioned the trial court in a motion in limine to exclude references to the debarment because (1) Bebo had requested that the ALJ reopen the debarment proceedings to address newly discovered evidence, presumably, related to BRW's misconduct, and (2) because the references to debarment would be unfairly prejudicial. In a minute order, the trial court granted Bebo's motion. The jury returned a verdict in favor of Bebo on all claims, including CDOH's counterclaims, and awarded damages to Bebo.

ferred to as claim preclusion. Because the court of appeals, the trial court, the administrative agency, and the parties involved in this case utilized the terms "collateral estoppel" and "res judicata" when referring to these doctrines, we do so as well in the interest of consistency and clarity.

In the second relevant legal action, Mattox filed a lawsuit against BRW asserting a variety of negligent or misrepresentory acts. On BRW's summary judgment motion, the trial court dismissed Bebo's action for failure to file the complaint within the two-year statute of limitations. The trial court also found the filing to be frivolous and groundless, awarding over $8000 in attorney's fees to BRW.

Bebo then brought this legal malpractice action against Mattox, asserting that Mattox negligently failed to comply with the statute of limitations in the action against BRW. This failure, Bebo argues, damaged Bebo by foreclosing its ability to recover for BRW's misconduct and also resulted in the attorney's fees awarded against Bebo for the filing of a frivolous lawsuit. Additionally, Bebo asserted a claim against Excell, contending that Excell was a joint venturer with Mattox and, therefore, was liable through imputation of the negligence claims.

The trial court granted Excell's motion to dismiss, holding that the relationship between BRW and Excell, upon which Bebo founded its joint venturer liability claim, would violate Rule 5.4 of the Rules of Professional Conduct. *See* Colo. RPC 5.4(a) (proscribing the sharing of legal fees between lawyers and non-lawyers). The court reasoned that a determination of vicarious liability premised on a joint venture initially must recognize the validity of the joint venture relationship. Since the agreement as argued by Bebo would be void, the trial court granted Excell's motion to dismiss.

The trial court subsequently granted Mattox's motion for summary judgment and dismissed with prejudice all claims against Mattox, holding that Bebo's underlying claim against BRW would have failed, and therefore, Bebo could not sustain its legal malpractice action against Mattox. This decision was predicated on the trial court's determination that, in the underlying claim against BRW, all of the damages arose through the debarment and that collateral estoppel barred Bebo from relitigating the fact and cause of the debarment as determined by the ALJ.

The court of appeals addressed, and rejected, Bebo's arguments for reversal of the trial court's decisions. It reasoned as follows. First, Mattox did not waive its collateral estoppel defense by asserting it for the first time in a motion for summary judgment. Second, the first element of collateral estoppel, that an issue was actually and necessarily litigated in a prior proceeding, was satisfied in the administrative debarment action. The misconduct of BRW was actually litigated because administrative regulations require that the "respondent shall present any information it feels is sufficient to prevent debarment," *see* Rule 3.22(c), 2 C.C.R. 601–10 (1999), which, according to the court of appeals, would include the misconduct of others. Third, using the same rationale, the court of appeals rejected Bebo's argument that it was not provided a full and fair opportunity to litigate its claims in the administrative hearing. Finally, the court of appeals found the trial court did not abuse its discretion in refusing to apply the prior inconsistent judgments exception to the collateral estoppel doctrine.

The court of appeals also affirmed the dismissal of Excell. The court recognized that joint venturers are liable for the negligence of other joint venturers. Since it was affirming the dismissal of the negligence claim against Mattox, no claim could be imputed to Excell, and the claim against Excell must, therefore, be dismissed.

We granted certiorari to consider whether the court of appeals correctly applied the doctrine of collateral estoppel to deny a legal malpractice action and whether the court of appeals correctly affirmed the dismissal of a potential joint venturer of the attorneys subject to the malpractice action.[2]

---

**2.** This court granted certiorari on the following issues:

 (1) Whether the court of appeals erred when it held that, under the facts of this case, the plaintiff was collaterally estopped from asserting a legal malpractice claim against its former attorneys based on the attorneys' failure to file suit on behalf of the plaintiff within the applicable statute of limitations.

 (2) Whether the court of appeals erred in affirming the dismissal of Excell, a joint venturer of the attorney-defendants.

## II.

This case comes before us on appeal from the grant of summary judgment for respondents Mattox and Excell. Summary judgment is a drastic remedy, only appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See Dale v. Guaranty Nat'l Ins. Co.*, 948 P.2d 545, 553 (Colo.1997) (citing C.R.C.P. 56(c)). In determining whether summary judgment is proper, the nonmoving party is entitled to the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts, and all doubts must be resolved against the moving party. *See id.* A court must consider the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits in determining whether to grant a motion for summary judgment. *See id.; see also* C.R.C.P. 56(c). This action requires us to examine the application of the doctrine of collateral estoppel within the construct of a legal malpractice action. To succeed on a legal malpractice claim founded in negligence, the plaintiff must establish that (1) the attorney owed a duty of care to the plaintiff, (2) the attorney breached that duty, and (3) the attorney proximately caused damage to the plaintiff. *See* Ronald E. Mallen & Jeffrey M. Smith, 1 *Legal Malpractice* § 8.12, at 608 (4th ed.1996); *cf. Broker House Int'l, Ltd. v. Bendelow*, 952 P.2d 860, 863 (Colo.Ct.App. 1998) ("To establish a prima facie case of legal malpractice, a client must show that the attorney breached a duty of care owed to the client and that the client suffered damages as a result of the breach.").

The existence and breach of a duty are not disputed. Bebo signed a retainer and fee agreement with Mattox in which Mattox agreed to represent Bebo regarding the Stroh Road bridge, thereby triggering a duty of care by creating a relationship between attorney and client. *See Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver, N.A.*, 892 P.2d 230, 240 (Colo.1995) (recognizing that the attorney-client relationship gives rise to a duty owed by an attorney to a client). An attorney owes to his client the duty "to employ that degree of knowl-

edge, skill, and judgment ordinarily possessed by members of the legal profession in carrying out the services for his client." *Id.* (internal quotation marks omitted). As noted by the trial court, Mattox had "ample opportunity" to file the complaint against BRW within the statute of limitations. Absent other considerations not alleged here, this failure constituted a breach of Mattox's duty of care to Bebo. *Cf. People v. Hockley*, 968 P.2d 109, 110 (Colo.1998) (imposing public censure, founded upon attorney negligence, for failure to file a claim within the relevant statute of limitations). *But see Myers v. Beem*, 712 P.2d 1092, 1093–94 (Colo. Ct.App.1985) (recognizing that the failure to file within the statute of limitations was not necessarily a breach of duty when the state of the law was unclear).

The case before us, instead, turns on the causal element of Bebo's legal malpractice claim against Mattox. Establishing causation in a legal malpractice action requires the plaintiff to prove what has been characterized as a "case within a case." *See Miller v. Byrne*, 916 P.2d 566, 579 (Colo.Ct.App. 1995). The plaintiff must demonstrate that the claim underlying the malpractice action should have been successful if the attorney had acted in accordance with his or her duties. *See id.*

Thus, we are required to examine the propriety of Bebo's negligence action against BRW in order to determine whether Mattox's failure to file within the statute of limitations caused harm to the plaintiff. In broad terms, Bebo's negligence action against BRW asserted that BRW improperly designed and supervised the construction of the bridge, and improperly investigated and reported the problems with the anchor bolts. Mattox counters that even had it complied with the statute of limitations, the negligence action would have failed on its merits. Specifically, Mattox argues, and the court of appeals agreed, that the doctrine of collateral estoppel would have precluded litigation of BRW's misconduct, and therefore, the negligence action necessarily would fail.

Bebo presents a number of arguments supporting its position that the court of appeals improperly applied collateral estoppel to the

issue of BRW's misconduct. This court will consider two of those arguments: (1) Mattox waived the collateral estoppel affirmative defense by failing to plead it in the answer to Bebo's complaint, and (2) the elements that this court has established to evaluate the applicability of the doctrine were not satisfied. We address these arguments in turn.

## A.

■ Bebo first argues that Mattox waived the defense of collateral estoppel by not asserting it in its pleadings. Relying upon this court's decision in *Cox v. Pearl Investment Co.*, 168 Colo. 67, 450 P.2d 60 (1969), the court of appeals rejected the petitioner's argument.

■ Collateral estoppel is an affirmative defense that ordinarily must specifically be pleaded in the answer. *See* C.R.C.P. 8(c) ("In pleading to a preceding pleading, a party shall set forth affirmatively ... estoppel...."); *Banek v. Thomas*, 733 P.2d 1171, 1174 n. 3 (Colo.1986). This court, however, has recognized that in some instances, an affirmative defense asserted for the first time in a motion for summary judgment will be deemed to be incorporated into the defendant's answer. *See Cox*, 168 Colo. at 70–71, 450 P.2d at 61–62; *see also Alien, Inc. v. Futterman*, 924 P.2d 1063, 1068 (Colo.Ct. App.1995) (citing *Cox* in stating, "an improper assertion of an affirmative defense must be objected to or such defect is waived"). In *Cox*, this court found that the defendant did not waive an affirmative defense when he asserted the defense for the first time in a motion for summary judgment. The court recognized that, had the defendant lost his motion for summary judgment and had the defendant wished to continue to assert the affirmative defense, the trial court would have been required to permit the defendant to amend his answer. *See Cox*, 168 Colo. at 70, 450 P.2d at 61. The court also noted that the plaintiffs were not prejudiced by the later assertion of the defense, and that by arguing the merits of the defense without raising the objection to its assertion, the plaintiffs waived any procedural objections they may have had. *See id.* at 71, 450 P.2d at 61–62.

In the case before us, Mattox did not plead collateral estoppel in the answer; however, it asserted in its summary judgment motion that "[w]ith regard to [paragraph D.5 of the Amended Complaint], the Plaintiff is estopped from relitigating the debarment hearing." Further, Mattox argued for several pages in its brief supporting the summary judgment motion that collateral estoppel precluded the relitigation of the findings of fact and conclusions of law of the administrative law judge. Bebo did not argue against the substantive application of collateral estoppel in its response to the summary judgment motion as was done in *Cox*, and it did not raise any procedural objections to the timeliness of Mattox's assertion. Additionally, as in *Cox*, Bebo was not prejudiced by the late assertion of the affirmative defense. Bebo had the opportunity to raise either substantive or procedural objections to the assertion of collateral estoppel, but chose not to do so. In light of these circumstances and the prior decisions of this court, we reject Bebo's argument and hold that Mattox did not waive collateral estoppel as an affirmative defense.

## B.

Bebo also argues that the court of appeals improperly evaluated the elements this court has found necessary to support application of the doctrine of collateral estoppel. We agree.

■ Through the operation of collateral estoppel, a court's final decision on an issue actually litigated and decided precludes relitigation of that issue in subsequent actions. *See Carpenter v. Young*, 773 P.2d 561, 565 (Colo.1989). The doctrine is intended to " 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.' " *Salida Sch. Dist. R–32–J v. Morrison*, 732 P.2d 1160, 1163 (Colo.1987) (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)). Collateral estoppel bars relitigation of an issue if:

(1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) The

party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) There was a final judgment on the merits in the prior proceeding; (4) The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

*Michaelson v. Michaelson,* 884 P.2d 695, 700–01 (Colo.1994).[3] The burden of establishing these elements rests with the party seeking preclusion. *See People v. Conley,* 804 P.2d 240, 244 (Colo.Ct.App.1990); *see also* 18 James Wm. Moore et al., *Moore's Federal Practice* § 132.03[2][g], at 132–83 (3d ed.1999). The fact that the prior proceeding was an administrative action of debarment does not prevent collateral estoppel from applying. Collateral estoppel may bind parties to an administrative agency's findings of fact and conclusions of law if the agency, while acting in a judicial capacity, resolved disputed issues of fact and the parties had an adequate opportunity to litigate those issues. *See Maryland Cas. Co. v. Messina,* 874 P.2d 1058, 1061 (Colo.1994); *see also Dale,* 948 P.2d at 549 ("[I]t is well established that the doctrine[ ] of... collateral estoppel may be applied to the adjudicatory decisions of administrative bodies."). An issue decided on a motion for summary judgment may collaterally estop relitigation of that issue in a subsequent proceeding. *See Carpenter,* 773 P.2d at 564–68; *see also* Restatement (Second) of Judgments § 27 cmt. d.

It is undisputed that elements two and three of the collateral estoppel requirements—that the preclusion is sought against a party to the original action and the existence of a final adjudication of the issue—were satisfied. Bebo contends, however, that an analysis of the proceedings at issue in this case demonstrates that elements one and four—the existence of identical issues which were actually litigated, and a full and fair opportunity to litigate the issue—were not satisfied, and that the court of appeals, therefore, erred in applying the doctrine.

■■■■ We now turn our attention to the first element of collateral estoppel—whether the issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding. For an issue to be actually litigated, the parties must have raised the issue in the prior action. *See Michaelson,* 884 P.2d at 701; *see also* Restatement (Second) of Judgments § 27 cmt. d. A legally raised issue is one that a party, by appropriate pleading, asserts through a claim or cause of action against the other. *See Michaelson,* 884 P.2d at 701. In addition to the issue having to be properly raised, the issue must be submitted for determination and then actually determined by the adjudicatory body. *See* Restatement (Second) of Judgments § 27 cmt. d.

■■■■ Fundamental to the "actually litigated" element of collateral estoppel is the recognition that the doctrine is inapplicable to matters that could have been, but were not, litigated in a prior proceeding. *See Industrial Comm'n v. Moffat County Sch. Dist. Re No. 1,* 732 P.2d 616, 620 (Colo.1987); *see also Dale,* 948 P.2d at 549 n. 3 ("only res judicata [and not collateral estoppel] applies to matters which could have been litigated but were not"). This court has long recognized this proposition, *see, e.g., Pomeroy v. Waitkus,* 183 Colo. 344, 350, 517 P.2d 396, 399 (1973) ("[Collateral estoppel] is narrower [than res judicata], however, in that it does not apply to matters which could have been litigated

---

3. While this court has recently articulated the first requirement in a slightly different manner, *see Guaranty Nat'l Ins. Co. v. Williams,* 982 P.2d 306, 308 (Colo.1999) ("(1) the issue precluded is identical to an issue actually determined in the prior proceeding"), the decisions themselves indicate no material difference in the application of the two variations. Indeed, this court previously has used the "actually litigated ... necessarily adjudicated" language to further define the scope of "actually determined." *See Bennett College v. United Bank of Denver, Nat'l Ass'n,* 799 P.2d 364, 366 (Colo.1990); *see also Lazy Dog Ranch v. Telluray Ranch Corp.,* 965 P.2d 1229, 1240 (Colo.1998) (concluding that collateral estoppel did not bar litigation of an issue when the issue "was not actually litigated or determined"). Further, the Restatement (Second) of Judgments, which requires an issue to be "actually litigated and determined by a valid and final judgment," Restatement (Second) of Judgments § 27 (1980), states: "When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated...." Restatement (Second) of Judgments § 27 cmt. d.

but were not."), and the proposition is in accord with the position held by many other jurisdictions and commentators. *Cf., e.g., Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) ("Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit."); *Restatement (Second) of Judgments* § 27 cmt. e; 18 *Moore's Federal Practice,* supra, § 132.03[2][a], at 132–80.

■ This court has also recognized that collateral estoppel applies only to issues that were necessarily adjudicated in the previous action. *See Michaelson,* 884 P.2d at 700; *Bennett College,* 799 P.2d at 366. An issue is necessarily adjudicated when a determination on that issue was necessary to a judgment. *See Michaelson,* 884 P.2d at 701–02. This requirement is justified by the recognition that a previous tribunal may not have taken the care needed to adequately determine an issue that would not affect the disposition of the case. *See* 18 Charles Alan Wright et al., *Federal Practice and Procedure* § 4421, at 193 (1981).

■ Having examined the fundamental concepts relevant to the actually litigated element of the collateral estoppel doctrine, we now apply them to the case at bar. Despite noting that "both parties agree that [BRW's misconduct] was not raised specifically in the debarment proceeding," the court of appeals found that the first element of collateral estoppel was satisfied. In so holding, the court noted: "If an issue has been determined in a former action, relitigation of that issue is barred, as is litigation of any issues that were necessary to the judgment as rendered." (citing *Central Bank Denver, N.A. v. Mehaffy, Rider, Windholz & Wilson,* 940 P.2d 1097 (Colo.Ct.App.1997)). Relying upon a Department of Highways regulation which requires that respondents in a debarment proceeding "shall present information it feels is sufficient to prevent debarment," *see* Rule 3.22(c), 2 C.C.R. 601–10, the court engaged in the following analytical steps. The debarment proceeding fully litigated Bebo's culpability; culpability, "of necessity" is determined based upon the evidence presented at the hearing; the regulation requires BCC to present evidence relevant to its defense; relevant evidence includes the culpability of others; therefore, BCC's failure to present BRW's misconduct did not prevent the issue from being necessarily adjudicated.

■ The court of appeals improperly expanded the concept of "necessarily adjudicated" to embrace a matter that the court believes *should* have been litigated because its assertion was required by regulation. Contrary to our reading of the court of appeals' opinion, the necessarily adjudicated concept, as properly construed, acts to circumscribe collateral estoppel by limiting its application to matters that both were actually litigated *and* were necessary to the adjudication. Under this limiting approach to "necessarily adjudicated," issues that were actually litigated and decided, but were not necessary to the final outcome of the case, are *not* subject to collateral estoppel in a future case. *See Michaelson,* 884 P.2d at 701–02 ("An issue is necessarily adjudicated when the determination of an issue was necessary to a judgment."); *City & County of Denver v. Block 173 Assocs.,* 814 P.2d 824, 831–34 (Colo.1991); *People ex rel. Gallagher v. District Court,* 666 P.2d 550, 554 (Colo.1983) (refusing to give preclusive effect to a previous decision upholding the competency of a witness to testify, when the evidence was subsequently excluded on relevance grounds); *Restatement (Second) of Judgments* § 27 cmt. h ("If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues ... is not precluded."); Wright et al., *supra,* § 4421.

The court of appeals' resolution of the first element runs counter to the express language of previous decisions articulating the requirements for the application of collateral estoppel. As noted *supra,* collateral estoppel only bars relitigation of claims that were actually litigated and necessarily adjudicated in a previous proceeding. To be actually litigated the issue must be raised by a party through an appropriate pleading or tried with the consent of the parties, it must be submitted to the prior tribunal for determination, and it must be determined by that tribunal. In the case before us, the issue of

BRW's misconduct was never pled in the debarment proceeding, it was neither submitted to nor addressed by the administrative law judge, and no final determination was made regarding BRW's misconduct. That issue, therefore, was neither actually litigated nor actually determined.[4]

 The situation at bar also fails to satisfy the fourth element of collateral estoppel, that Bebo had a full and fair opportunity to litigate the issue of BRW's negligence in the prior proceeding. While this court has not extensively addressed the scope of this element, we have recognized that factors determinative of whether an individual received a full and fair opportunity to litigate include: whether the remedies and procedures of the first proceeding are substantially different from the proceeding in which collateral estoppel is asserted; whether the party in privity with the party against whom collateral estoppel is sought had sufficient incentive to litigate vigorously; and the extent to which the issues are identical. *See Bennett College,* 799 P.2d at 369; *see also State Farm Mut. Auto. Ins. Co. v. Tygart,* 971 P.2d 253, 255 (Colo.Ct.App.1998).

 Addressing the first factor, Bebo contends that the quality and extensiveness of the administrative and the judicial proceedings were "in no way comparable." To support this argument, Bebo notes that the agency proceeding utilized Colorado's rules of discovery, evidence, and procedure, only "to the extent practicable." *See* Rules 8(a), 14, 15, 1 C.C.R. 104–1 (1987). Bebo also argues that it conducted no discovery and that the CDOH did not call the BRW Project Engineer as a witness. We do not find Bebo's argument persuasive. First, no procedural device or rule precluded Bebo from seeking information regarding BRW's misconduct through discovery. Additionally,

Bebo was free to call the BRW Project Engineer as a witness, but, for whatever reason, chose not to do so. Second, we refuse to recognize that agency proceedings differ markedly from judicial proceedings because those administrative proceedings utilize rules of discovery, evidence, and procedure only "to the extent practicable." An inquiry into whether a party received a full and fair opportunity to litigate an issue must look to whether the initial proceeding was so inadequate or so narrow in focus as to deprive an individual of his or her due process rights should application of the doctrine of collateral estoppel be used to bar relitigation of that issue. *Cf. Morrison,* 732 P.2d at 1164–65; *Daniels v. Equitable Life Assur. Soc. of the U.S.,* 35 F.3d 210, 216 (5th Cir.1994); *Hardy v. Johns–Manville Sales Corp.,* 681 F.2d 334, 338 (5th Cir.1982) ("The right to a full and fair opportunity to litigate an issue is, of course, protected by the due process clause of the United States Constitution."); 18 Moore et al., *supra,* § 132.04[1][a][ii], at 132–141. Bebo does not point us to any procedural failures that rise to this level.

However, the final factor recognized in *Bennett College,* the extent to which the issues are identical, precludes a finding that Bebo was provided with a full and fair opportunity to litigate the issue of BRW's misconduct. The debarment proceeding assessed the conduct of Bebo as relevant to whether the state would maintain a business relationship with Bebo. The negligence action against BRW, on the other hand, must assess the relationship between BRW and Bebo, focusing on how the misconduct of BRW affects Bebo. Thus, the two proceedings present substantially different issues, and therefore, cannot be said to present, to any extent, identical issues.[5] Thus, the final factor of *Bennett College* is not satisfied.

4. The respondents, presumably to avoid the fatal effect of the actually litigated/actually determined requirement, contend that the issue sought to be collaterally estopped is not the misconduct of BRW, but the validity of the debarment itself. This position is clearly without merit. The debarment proceeding focused on whether Bebo should continue to be eligible to receive governmental construction contracts. This action, on the other hand, focuses on the potential negli-

gence of BRW, with the debarment action providing a potential source for damage to Bebo. We reject Mattox's attempt to reframe the relevant issue in the negligence action against BRW.

5. As noted *supra,* we reject Mattox's attempt to recast the issue presented in the negligence action from BRW's negligence to the validity of the debarment proceeding.

Additionally, this court has addressed the existence of a full and fair opportunity to litigate an issue within the specific context of an initial administrative. proceeding. We have recognized that the findings of fact and conclusions of law of an administrative agency, acting in a judicial capacity, may be binding on the parties in a subsequent proceeding if the agency resolved disputed issues of fact which the parties had an adequate opportunity to litigate. *See Messina*, 874 P.2d at 1061. In this case, the ALJ did not address, let alone resolve, issues of fact regarding BRW's potential negligence, and the parties did not litigate BRW's alleged negligence.

In light of the dissimilar focus of the agency debarment proceeding and the district court negligence action, we hold that Bebo was not provided a full and fair opportunity to litigate the issue of BRW's negligence in the debarment action.

Because the first and fourth elements of the collateral estoppel test have not been satisfied, we hold that the doctrine of collateral estoppel is not available to bar litigation of BRW's misconduct in Bebo's negligence action against BRW. The court of appeals improperly applied the doctrine of collateral estoppel to determine that Bebo's negligence action would not have succeeded against BRW. This determination of the underlying claim provided the basis for the dismissal of the legal malpractice action against Mattox. We therefore reverse the decision of the court of appeals and remand for action consistent with this opinion. Because we now hold that collateral estoppel was not applicable in the underlying negligence action, we need not address Bebo's arguments that collateral estoppel, as an equitable doctrine, is not appropriate under these circumstances and that the potential existence of two prior inconsistent judgments precludes the utilization of the doctrine.

## III.

This court also granted certiorari to determine whether the court of appeals correctly affirmed the dismissal of Excell, a potential joint venturer of Mattox. The court of appeals dismissed the action against Excell because the sole basis for the allegations rested through imputation of the negligence claims against Mattox. Because we now reverse the court of appeals' dismissal of the legal malpractice claim against Mattox, this basis for dismissing Excell is no longer appropriate. We, therefore, reverse the court of appeals' dismissal of Bebo's claim against Excell, and remand it for further consideration should the underlying claim against Bebo be found meritorious.

## IV.

For these reasons, we reverse the judgment of the court of appeals. We remand this case to that court for consideration of the other appellate issues raised by the parties but not reached by the court of appeals in its original decision.

Justice SCOTT concurs.

Justice BENDER does not participate.

JUSTICE SCOTT, concurring:

I join in the judgment of the majority and most of what is set forth in the majority opinion. However, I write separately to indicate that I would not go as far as the majority does in addressing matters not necessary to the result we both reach—a conclusion that "the doctrine of collateral estoppel is not available to bar litigation of BRW's misconduct in Bebo's negligence action against BRW." Maj. op. at 88. In my view, this result is reached once we determine that the issue of BRW's misconduct was not "actually litigated and necessarily adjudicated." Therefore, I do not reach the question of whether there was "a full and fair opportunity to litigate the issue"—principally because BRW's misconduct was *not actually* litigated.

## I.

I agree with the majority that collateral estoppel bars relitigation of an issue when four elements exist to preclude relitigation of settled issues. Those four elements are:

(1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) The party against whom estoppel was sought

was a party to or was in privity with a party to the prior proceeding; (3) There was a final judgment on the merits in the prior proceeding; [and](4) The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

Maj. op. at 85 (citing *Michaelson v. Michaelson*, 884 P.2d 695, 700–01 (Colo.1994)). I also agree that in the case before us "the issue of BRW's misconduct was never pled . . . nor addressed by the administrative law judge, and no final determination was made regarding BRW's misconduct." Maj. op. at 87. Therefore, as does the majority, I conclude, "[t]hat issue . . . was neither actually litigated nor actually determined." Maj. op. at 87.

However, because all four elements must be met and finding that the first is not present, unlike the majority, I conclude we need not address the fourth element. In reaching the fourth element, the majority discusses whether "Bebo had a full and fair opportunity to litigate the issue of BRW's negligence in the prior proceeding," maj. op. at 87, and concludes that Bebo did not. *See id.* at 88. I neither agree nor disagree with this determination because I do not join in the majority's decision to address this issue to decide this case. Presumably, the majority reaches the fourth element because it is somewhat related to the first. However, in my view, the two are only related when the first element is met (the issue is actually litigated), which is not the case here. As in *Michaelson*, our determination that "collateral estoppel does not preclude [newly asserted] claims because the issue was neither litigated nor necessarily adjudicated," *Michaelson*, 884 P.2d at 703, is all that is required to support our holding here—nothing more.[6]

The cases relied upon by the majority only proceed to the fourth element because, unlike the case here, the first element was satisfied. *See Bennett College v. United Bank of Denver, Nat'l Ass'n*, 799 P.2d 364 (Colo.1990); *State Farm Mut. Auto. Ins. Co. v. Tygart*, 971 P.2d 253 (Colo.App.1998). Thus, the steps the majority takes today to answer a question not necessary for the judgment and, in effect, providing dicta that may lead to unintended consequences takes us further than I am willing to go. *See Olney Springs Drainage Dist. v. Auckland*, 83 Colo. 510, 517, 267 P. 605, 608 (1928) (as a general rule, the supreme court will not address issues not affecting the outcome or disposition of the case). The factors discussed in *Bennett College* are, to my understanding, well and good. However, in that case, unlike the case here, the "issue precluded [was] identical to an issue actually determined in the prior proceeding." *Bennett College*, 799 P.2d at 367. There, we resorted to the other factors, in particular element four, to resolve the legal question of collateral estoppel. Because I do not want to be bound by our analysis today in a case in the future where the issue is "actually litigated and necessarily adjudicated," I do not, on this record today, go that far.

## II.

Hence, while I join in the judgment of the court, I only join in the majority's opinion to the extent that the majority addresses and discusses the first, and not the fourth, element of the factors necessary for a party to be collaterally estopped.

6. I joined the *Michaelson* opinion, creating the majority in a divided court, because we resolved

that case based solely on the first element and did not address the fourth element.