23CA1367 Parental Resp Conc MM 01-23-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1367
El Paso County District Court No. 16DR30155
Honorable Chad Miller, Judge

In re the Parental Responsibilities Concerning M.M., a Child,

and Concerning Kristin Lee a/k/a Kristin Ellias,

Appellee,

and

William Muhr,

Appellant.

ORDER AFFIRMED, ORDER REVERSED,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE TOW
Martinez* and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 23, 2025

No Appearance for Appellee

Mark D. Francis, Colorado Springs, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     William Muhr (father) appeals from the district court's order releasing $78,380 held in the court registry to Kristen Lee (mother) to be applied towards a judgment entered against father for unpaid temporary child support.  Father also appeals the reassignment of the case to a new district court judge.  We reverse the order releasing the $78,380 and remand the case for further proceedings as to that issue.  But we affirm the order reassigning the case.

## I.     Background

¶ 2     In February 2016, mother petitioned to allocate parental responsibilities for the parties' only minor child, M.M.  While the proceedings were pending, mother sought and obtained an award of temporary child support in the amount of $1,270 per month.  Father appealed, and a division of this court affirmed.  *In re Parental Responsibilities Concerning M.M.*, slip op. (Colo. App. No. 17CA0263, Apr. 26, 2018) (not published pursuant to C.A.R. 35(e)) (M.M. I).

¶ 3     The district court entered permanent orders allocating parental responsibilities in October 2020.  In February 2021, mother sought and obtained a support judgment in the amount of $78,380 against father, consisting of unpaid temporary child

1

support and statutory interest. Mother also filed and recorded two notices of lis pendens against certain real property owned by the irrevocable K and S Family Trust (the Trust), which mother asserted was an entity that was indistinguishable from father and was being used to conceal his assets.

¶ 4    To lift the cloud on title caused by the notices of lis pendens, the Trust then agreed to deposit, under protest, the amount of $78,380 into the registry of the court. Upon the court's receipt of the funds, mother released the notices of lis pendens. Father appealed the $78,380 judgment entered in mother's favor, but a division of this court dismissed the portion of father's appeal as to the unpaid temporary child support. *In re Parental Responsibilities Concerning M.M.*, slip op. at ¶¶ 42-45 (Colo. App. No. 20CA2066, June 2, 2022) (not published pursuant to C.A.R. 35(e)) (*M.M. II*).

¶ 5    Over a year later, mother filed a notice to set a hearing concerning the funds being held in the court registry. A hearing was set for July 31, 2023, and following a prehearing conference, the parties and the Trust were permitted to file position statements as to the disposition of the funds.

¶ 6    At the hearing, father argued that the court lacked jurisdiction to enter an order as to the funds because, in June 2023, he had filed a petition for certiorari with the United States Supreme Court asserting various violations of his right to due process during the prior proceedings.  Mother disagreed that the court lacked jurisdiction to proceed and argued that the court could, without taking any evidence, release the funds to her based on issue preclusion.  Mother sought to apply issue preclusion based on three orders issued in El Paso County District Court case number 12DR2531 (the *B.B.* case), which involved father's obligation to pay child support for a different child, B.B.  In that proceeding, the district court found that father had unfettered access to, and control over, the Trust's assets.

¶ 7    Near the end of the hearing, the district court was prepared to issue a verbal order.  But before the court could rule, father requested a short recess.  After the recess, mother's attorney informed the court that the parties had reached a settlement, in which father would directly pay mother the full $78,380 judgment within seven days in exchange for the release of the funds in the court registry to the Trust.  Father confirmed the terms of the

settlement on the record. The court directed mother's attorney to draft and file an agreement reflecting the settlement. But a week later, mother filed a request for a ruling from the July 31, 2023, hearing, stating that father was refusing to honor the settlement. The court set a status conference for August 31, 2023, at which it would issue a ruling.

¶ 8 At the status conference, the court stated that it was issuing the order that it had intended to issue before the unsuccessful settlement. The court found that it had jurisdiction and ordered the money released to mother based on issue preclusion. The court relied on orders from the *B.B.* case, which contained findings that the Trust was a sham and was a way for father to hide funds to avoid paying his child support obligations.

¶ 9 Judge Miller, who presided over the hearing, also stated that, going forward, he would be recusing from the case and would have the case reassigned to a new judge. Judge Miller explained that he was convinced that father had never intended to honor the earlier settlement agreement and had possibly orchestrated the settlement as a fraudulent stall tactic. Per Judge Miller, recusal was necessary because "[m]oving forward I cannot believe anything that [father]

tells me . . . [and] I would have a conflict because if he stood here and told me something I would not believe him." However, Judge Miller emphasized that he was nonetheless ordering the release of the funds to mother because such an order was "going to be entered" at the conclusion of the July 31, 2023, hearing, "before I had these credibility concerns about [father]." Judge Miller immediately signed mother's proposed order releasing the funds to her, and the next day he issued an order of recusal reassigning the case to Division 17 of the El Paso County District Court.

## II. Effect of Father's Petition for Certiorari

¶ 10     As a threshold matter, we reject father's contention that because he had a petition for certiorari pending with the United States Supreme Court, the district court lacked jurisdiction to issue any orders in the case, including the order releasing the funds. It is true that a timely appeal of a final judgment or order to this court, and the subsequent filing of a petition for certiorari with the *Colorado Supreme Court*, generally divests the district court of jurisdiction to act on matters relative to the appealed judgment or order until the mandate issues. *Musick v. Woznicki*, 136 P.3d 244, 248 (Colo. 2006); *People v. Jones*, 631 P.2d 1132, 1133 (Colo.

1981).  But father has not cited any legal authority suggesting that the mere filing of a petition for certiorari with the *United States Supreme Court* similarly divests the district court of jurisdiction.

¶ 11    Indeed, "[a] review by the [United States] Supreme Court of a judgment or decree of a State court shall be conducted in the same manner and under the same regulations, and shall have the same effect, as if the judgment or decree reviewed had been rendered in a court of the United States."  28 U.S.C. § 2104.  And it is well established in federal court that the mere "filing of a petition for certiorari does not automatically stay proceedings in the [federal] District Court."  *United States v. Eisner*, 323 F.2d 38, 42 (6th Cir. 1963) (recognizing that if the filing of a petition for a writ of certiorari automatically divested a federal district court of jurisdiction to enter further orders, the procedures for obtaining a stay of the proceedings under 28 U.S.C. § 2101 would be superfluous); *see also United States v. Sears*, 411 F.3d 1240, 1242 (11th Cir. 2005) ("[T]hat certiorari proceedings were going forth in the Supreme Court does not divest the district court of jurisdiction."); *State v. Abram*, 815 N.W.2d 897, 904-05 (Neb. 2012) ("[T]he mere filing of a petition for certiorari [in the United States

Supreme Court] does not automatically stay proceedings in a lower [state] court and does not divest a trial court of jurisdiction.")

¶ 12    Accordingly, we conclude that despite father's June 2023 petition for certiorari to the United States Supreme Court, the district court retained jurisdiction to enter orders in the case, including the August 31, 2023, order releasing the funds and the subsequent order of reassignment.

## III.    Issue Preclusion

¶ 13    Father contends that the district court erred by applying the doctrine of issue preclusion to conclude that, because the Trust was a sham, the funds held in the court registry could be released to satisfy father's child support arrearage.  We agree because not all the elements of issue preclusion were met as to the three orders that the district court relied upon.  We therefore reverse the district court's order releasing the funds and remand the case for further proceedings.

### A.    Applicable Law

¶ 14    Under the doctrine of issue preclusion, "[a] court may rely on a determination made in a separate legal proceeding and bar parties from relitigating that matter" in the new proceeding.  *Sensible Hous.*

*Co. v. Town of Minturn*, 280 P.3d 36, 39 (Colo. App. 2010), *rev'd on other grounds*, 2012 CO 23. Issue preclusion bars a party from relitigating an issue if:

> (1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) The party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) There was a final judgment on the merits in the prior proceeding; [and] (4) The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

*Rantz v. Kaufman,* 109 P.3d 132, 139 (Colo. 2005) (quoting *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84-85 (Colo. 1999)).

¶ 15    The party asserting issue preclusion has the burden of establishing each element, *Bebo,* 990 P.2d at 85, and whether the elements are met presents a question of law that we review de novo, *Vanderpool v. Loftness,* 2012 COA 115, ¶ 17. However, where, as here, a party seeks to apply nonmutual offensive issue preclusion, which "presents a unique potential for unfairness toward the party sought to be estopped," the district court must also consider other factors which bear on the fairness of applying issue preclusion. *See*

*id.* at ¶ 14 (describing additional considerations in nonmutual offensive issue preclusion). Accordingly, we also "review a district court's ultimate decision whether to apply offensive issue preclusion for an abuse of discretion." *Id.* at ¶ 18.

¶ 16 Here, in applying issue preclusion, the district court relied on three separate orders from the *B.B.* case. We agree with father that the orders relied on by the court were either insufficient to apply issue preclusion or were not final for purposes of issue preclusion.

### B. March 3, 2017, Order

¶ 17 The first order presented by mother, and relied on by the district court, consisted of four pages of a March 3, 2017, transcript, in which a magistrate held father in punitive and remedial contempt for failing to pay child support in the *B.B.* case. The district court took judicial notice of the transcript excerpt, in which the magistrate found that the Trust was effectively a sham and that father had unfettered access to the Trust's assets.

¶ 18 But we agree with father that the four pages of the transcript alone were insufficient to apply issue preclusion as to whether the Trust's funds held in the court registry could be used to satisfy the child support arrearage. Indeed, based on the very limited record of

9

the contempt proceedings in the *B.B.* case provided by mother, we cannot say that the issue of whether the Trust's assets can be appropriated to satisfy father's child support arrearage was both actually and necessarily adjudicated in the contempt proceeding. *Rantz*, 109 P.3d at 139; *see also Nat. Energy Res. Co. v. Upper Gunnison River Water Conservancy Dist.*, 142 P.3d 1265, 1280 (Colo. 2006) (recognizing that for an issue to be actually litigated, the issue "must have been properly raised by appropriate pleading" and actually determined by the court).

## C. January 8, 2018, and January 25, 2021, Orders

¶ 19    The district court also relied on orders from the *B.B.* case dated January 8, 2018, and January 25, 2021.  In those orders, the district court in the *B.B.* case made findings that father had hidden assets in, and otherwise controlled, the Trust.  But we agree with father that those orders were not final for issue preclusion purposes.

¶ 20    A final judgment or order "is an essential prerequisite for the applicability of [issue preclusion]."  *S.O.V. v. People in Interest of M.C.*, 914 P.2d 355, 359 (Colo. 1996).  Accordingly, a judgment or order that is later reversed or vacated is generally not final for issue

10

preclusion purposes. *See id.* (no final judgment where "[t]he judgment that had been entered on the jury verdict was reversed on appeal and the case was remanded for a ruling on [a] motion for a new trial"); *Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 23 (Colo. App. 2010) ("A judgment is not final in the sense that it binds the parties [for purposes of issue preclusion] until the losing party has failed properly to perfect an appeal, or until the highest court, whose jurisdiction is invoked by either party, upholds the decision of the trial court." (quoting *Benham v. Plotner,* 795 P.2d 510, 512 (Okla. 1990)).

¶ 21    However, if a judgment or order is partially reversed, that partial reversal generally negates only the part of the judgment or order that has been reversed, and issue preclusion can still be asserted based on the remaining parts of the judgment. *See FCA US, LLC v. Spitzer Autoworld Akron, LLC*, 887 F.3d 278, 289-90 (6th Cir. 2018) (recognizing that the part of a reversed judgment that remains can support issue preclusion); *cf.* 18A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 4432 (2d ed. 2013) ("There is no preclusion as to the matters vacated or

reversed" absent further proceedings on remand restoring the original judgment or expanding the preclusion.).

¶ 22    Here, as recognized in *In re Parental Responsibilities Concerning B.B.*, slip op. at ¶¶ 4-6 (Colo. App. No. 21CA0326, Apr. 28, 2022) (not published pursuant to C.A.R. 35(e)) (the *B.B.* appeal), the January 8, 2018, order denying father's October 2016 motion to modify child support was vacated by the district court, which acknowledged that it had erroneously denied father's motion and instead should have modified child support in the *B.B.* case retroactive to October 1, 2016. And while the district court in the *B.B.* case had asked mother's counsel to submit a corrected child support worksheet for the court's review, that never happened. *Id.* at ¶¶ 6, 9. Accordingly, the division in the *B.B.* appeal instructed the district court on remand to issue a corrected child support order dating back to October 2016. *Id.* at ¶¶ 10-16.

¶ 23    Next, the January 25, 2021, order, which resolved a second motion to modify child support filed by father in the *B.B.* case, was vacated and remanded by the division in the *B.B.* appeal for the district court's reconsideration based on the parties' present financial circumstances. *Id.* at ¶¶ 1, 8, 17-19, 37.

¶ 24 Therefore, the district court here failed to recognize that both the January 8, 2018, and the January 25, 2021, child support modification orders from the *B.B.* case had been vacated, meaning that they were not final orders for issue preclusion purposes. *S.O.V.*, 914 P.2d at 359; *Barnett*, 252 P.3d at 23. And mother, as the party with the burden of establishing issue preclusion, *Bebo*, 990 P.2d at 85, did not otherwise demonstrate that, as of the August 31, 2023, order releasing the funds, further proceedings on remand in the *B.B.* case had led to the reinstatement of the two vacated orders. *See* 18A Wright & Miller, *supra*, § 4432.

## D. Remand

¶ 25 Because we conclude that the district court erred in applying issue preclusion, we reverse the August 31, 2023, order and remand the case for further proceedings concerning the disposition of the funds that were held in the court registry.

## IV. Remaining Issues

¶ 26 Because we are reversing and remanding for further proceedings, we decline to address father's contention that the district court erred by denying him an opportunity to object to mother's proposed order. We also decline to address father's

13

assertion that the Trust was an indispensable party that should have been joined in the proceedings. Father will have the opportunity to seek the inclusion of the Trust under C.R.C.P. 19 on remand.

¶ 27 We also decline to address all but one of the issues father raises regarding disqualification of Judge Miller. As we read the record, Judge Miller had not recused before issuing the order to release the funds. Thus, there is no jurisdictional defect and the issue would merely be one of whether the order was tainted by bias. Because we are reversing the order, any taint there may have been has been cured. We also decline to consider father's arguments that Judge Miller should have been disqualified from the beginning of the case — in part because they have been rejected before and are the law of the case and in part because Judge Miller has now recused so those issues are moot.

¶ 28 The only issue we address in this regard is the challenge to the order of reassignment, because it will necessarily arise on remand. Father contends that, because Judge Miller was recusing, he lacked subject matter jurisdiction to issue the September 1, 2023, order

reassigning the case to Division 17 of the El Paso County District Court.

¶ 29 We review de novo whether the district court had subject matter jurisdiction. *See In re Marriage of Roth*, 2017 COA 45, ¶ 13. A challenge to subject matter jurisdiction cannot be waived and may be raised at any stage of the proceedings. *Town of Carbondale v. GSS Props., LLC*, 169 P.3d 675, 681 (Colo. 2007).

¶ 30 This is now the third time that father has raised this same recusal/successor judge issue on appeal. Specifically, father made nearly identical contentions in *M.M. II*, slip. op. at ¶¶ 10-13, and the *B.B.* appeal, slip op. at ¶¶ 24-27, concerning the procedure that followed the recusal of the initial judicial officer, Judge Bain, from both cases and the reassignment of both cases to Judge Miller. We agree with the analysis of the divisions in those cases.

¶ 31 Specifically, when a district court judge is disqualified from hearing a case, that judge loses jurisdiction to enter rulings requiring the exercise of judicial discretion, but not to execute administrative tasks. *See People v. Arledge*, 938 P.2d 160, 167 (Colo. 1997). Therefore, Judge Miller retained the jurisdiction to reassign the case to another judge, and contrary to father's

15

assertions, the record does not indicate that the case was not randomly assigned to a successor judge. Indeed, anticipating father's objection, Judge Miller specifically stated that, in accordance with the district court's procedures, the case would be submitted to the court staff for random reassignment. *Cf.* Chief Justice Directive 95-01, Authority and Responsibility of Chief Judges § 6.b (amended Aug. 2005) ("The chief judge may assign and reassign cases to courts or divisions within the courts and may delegate the assignment power.").

## V. Disposition

¶ 32 The August 31, 2023, order releasing the funds from the court registry to mother is reversed. The September 1, 2023, order reassigning the case to Division 17 or the El Paso County District Court is affirmed. The case is remanded for further proceedings consistent with this opinion.

JUSTICE MARTINEZ and JUDGE BERGER concur.