RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0066p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

FCA US, LLC, fka Chrysler Group, LLC
                    *Plaintiff-Appellee,*

FRED MARTIN MOTOR COMPANY,
                    *Intervenor Plaintiff-Appellee,*

                    *v.*

SPITZER AUTOWORLD AKRON, LLC
                    *Defendant-Appellant.*

No. 17-1161

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:16-cv-11186—Sean F. Cox, District Judge.

Argued: November 30, 2017

Decided and Filed: April 4, 2018

Before: NORRIS, ROGERS, and BUSH, Circuit Judges.

---

## COUNSEL

**ARGUED:** David M. Zack, BLEVINS SANBORN JEZDIMIR ZACK, PLC, Detroit, Michigan, for Appellant. Jay F. McKirahan, MAC MURRAY & SHUSTER, LLP, New Albany, Ohio, for Appellee Martin Motor Company. Hugh Q. Gottschalk, WHEELER TRIGG O'DONNELL LLP, Denver, Colorado, for Appellee FCA. **ON BRIEF:** David M. Zack, BLEVINS SANBORN JEZDIMIR ZACK, PLC, Detroit, Michigan, for Appellant. Jay F. McKirahan, Patrick W. Skilliter, MAC MURRAY & SHUSTER, LLP, New Albany, Ohio, for Appellee Martin Motor Company. John E. Berg, Cynthia M. Filipovich, CLARK HILL PLC, Detroit, Michigan, for Appellee FCA.

———————

**OPINION**

———————

ROGERS, Circuit Judge.  In a previous case involving these same parties, we held that certain provisions of Michigan and Nevada law were preempted by a federal statute, but we upheld—as unchallenged on appeal—the district court's decision in that case that similar provisions of Ohio law were not so preempted.  Spitzer Autoworld Akron, a party to the previous case, as a party on the appeal in the previous case, explicitly declined to argue preemption of the Ohio statute, but now asserts on appeal from a decision in a subsequent, independent proceeding that the Ohio statute *is* preempted, based on our analysis of Michigan and Nevada law in the previous case.  While this procedural situation is somewhat unusual, it should come as no surprise that Spitzer cannot now make the argument that it so clearly gave up in earlier litigation with the same parties regarding the same facts.  The district court accordingly was correct to rule that principles of collateral estoppel foreclose Spitzer's argument.

The previous case was a consolidated action involving automobile dealerships from Michigan, Nevada, Ohio, Florida, California, and Wisconsin, whose franchise agreements were rejected during Chrysler's bankruptcy, but who had arbitrated successfully under Section 747 of the Consolidated Appropriations Act of 2010, Pub. L. No. 111-1117, 123 Stat. 3034, 3219–22, to be reinstated to Chrysler's dealer network.  In the consolidated action, the district court held that Section 747 did not preempt the dealer protest laws of each of the six states, which grant existing dealerships certain rights to protest the installation of competing dealerships in the same vicinity.  Four rejected dealers, three from Michigan and one from Nevada, appealed the district court's preemption decision; Spitzer Autoworld Akron LLC, a party to the consolidated action seeking reinstatement to Chrysler's Ohio dealer network, did not.  In *Chrysler Group LLC v. Fox Hills Sales, Inc.*, we reversed the district court's judgment in the consolidated action in part, and held that Section 747 did not preempt the state dealer laws of Michigan and Nevada, but we explicitly did "not consider the preemption argument with respect to Ohio state dealer protest laws." 776 F.3d 411, 424 n.7, 430 (6th Cir. 2015) (*Fox Hills*).

Now Chrysler, Spitzer, and Fred Martin Motor Company are engaged in a protest proceeding pending before the Ohio Motor Vehicles Dealer Board, and Chrysler filed the current action to enjoin Spitzer from relitigating the preemption issue before the Ohio dealer board. The court below held that collateral estoppel precludes Spitzer from raising the preemption issue, and the court accordingly granted Chrysler's request for injunctive relief barring Spitzer from relitigating the issue before the dealer board. On appeal, Spitzer contends that collateral estoppel is not applicable, and that the district court's judgment violates *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny. Because all the elements for collateral estoppel are met and no exceptions apply here, the district court properly determined that Spitzer is barred from raising the preemption issue before the state dealer board. Moreover, *Younger* abstention is not applicable because the Ohio dealer protest proceeding is unlike any of the three types of cases to which *Younger* applies.

## I. The Consolidated Action

The background to these suits is set forth more fully in *Fox Hills*, *see* 776 F.3d at 414–21, and only a shorter version is warranted here. In the throes of the financial crisis, Chrysler filed for Chapter 11 bankruptcy in April 2009. *See In re Chrysler LLC*, 405 B.R. 84, 87–88 (Bankr. S.D.N.Y. 2009). The bankruptcy restructuring plan transferred almost all the business from "Old Chrysler" to "New Chrysler."[1] When Old Chrysler transferred its assets to the new entity, the restructuring plan included procedures designed to consolidate and streamline Old Chrysler's business operations, including terminating sales and service agreements with 789 dealers. The bankruptcy court overseeing the Chrysler restructuring authorized the dealership rejections. *See id.* at 88; *In re Old Carco LLC*, 406 B.R. 180, 186–87 (Bankr. S.D.N.Y. 2009).

---

[1]Previous courts have distinguished between "Old Chrysler" (aka Chrysler LLC), which existed before its bankruptcy, and "New Chrysler" (aka Chrysler Group LLC), which was formed after Old Chrysler's insolvency and assumed nearly all the prior company's ongoing business. In 2014, Chrysler Group LLC was renamed FCA US LLC.

Passed to protect the interests of the rejected dealers, Section 747 of the Consolidated Appropriations Act of 2010, Pub. L. No. 111-1117, 123 Stat. 3034, 3219-22, was intended to "establish [] a disclosure and arbitration process to determine whether dealers that had their franchise agreements terminated or not assumed by a successor company should be added to dealer networks of automobile manufacturers partially owned by the Federal Government." H. R. Rep. No. 111-355, at 942 (2009), 2009 U.S.C.C.A.N. 11-5, 1251 (Conf. Rep.). Many rejected dealers sought arbitration against New Chrysler under Section 747. Out of the over 400 rejected dealers who elected to arbitrate, Chrysler prevailed in 76 arbitrations, the dealers prevailed in 32 arbitrations, and the remaining disputes were settled through other means. *Chrysler Grp. LLC v. S. Holland Dodge, Inc.*, 862 F. Supp. 2d 661, 670 n. 3 (E.D. Mich. 2012).

Disagreement about what the Section 747 arbitration orders entailed led to multiple lawsuits, which the district court consolidated into one consolidated action. In the consolidated action, Chrysler sought, among other things, a declaration that Section 747 did not preempt the provisions of state dealer laws governing the establishment of additional like-line dealers. Several existing like-line dealers, including Fred Martin, were also parties to the consolidated action and similarly sought a declaration that Section 747 did not preempt the state dealer protest laws of their respective states. Fred Martin also claimed that Section 747 was unconstitutional. On the other hand, the rejected dealers who had successfully won the right to a Letter of Intent through arbitration under Section 747, including Spitzer, sought a declaration that Section 747 did preempt the dealer protest laws of their respective states.

The parties cross-filed numerous motions for summary judgment, and the district court ruled on all the parties' dispositive motions. On the preemption issue, the district court held that:

> *Section 747 does not preempt the state-law dealer acts that govern the relationships between automobile manufacturers and dealers in* California (Cal. Vehicle Code § 3060 *et seq.*), Florida (Fla. Stat. § 320.01 *et seq.*), Michigan (Mich. Comp. Laws § 445.1561 *et seq.*), Nevada (Nev. Rev. Stat. § 482.36311 *et seq.*), *Ohio* (Ohio Rev. Code. § 4517.43), or Wisconsin (Wis. Stat § 218.0101 *et seq.*). . . . IT IS FURTHER ORDERED that New Chrysler's motions for summary judgment, seeking summary judgment as to its July 14, 2011 Complaint for Declaratory Judgment against *Spitzer,* BGR and Boucher . . . are GRANTED.

*S. Holland Dodge*, 862 F. Supp. 2d at 684 (emphasis added).

Four rejected dealers in the consolidated action from Michigan and Nevada who had successfully arbitrated under Section 747 appealed the district court's no-preemption decision, and Fred Martin cross-appealed, arguing that the district court erred by not considering Fred Martin's constitutional challenge to Section 747. *Fox Hills*, 776 F.3d at 422. Spitzer, however, did not appeal the district court's preemption ruling, but it did appear on appeal to defend Section 747's constitutionality and to claim that Fred Martin lacked standing to raise a constitutional challenge to the Act. *Id.*

Spitzer's arguments before the Sixth Circuit relied on the premise that the district court's no-preemption decision regarding Ohio's dealer protest laws was valid, and at oral argument in *Fox Hills* Spitzer acknowledged that its position on appeal with respect to preemption was contrary to that of the other dealers. Spitzer argued that Fred Martin could not show the risk of harm necessary for Article III standing because the only reason Fred Martin had filed a cross-appeal was the "possibility that there would be preemption [of Ohio's dealer protest laws][,]" and "that possibility [was] gone with [the district court's] decision" because Spitzer did not appeal the preemption issue with respect to Ohio's dealer laws. Moreover, Spitzer acknowledged at oral argument in *Fox Hills* that it had chosen not to appeal the district court's preemption decision because it felt it had "such a strong position with respect to [the] [Letter of Intent], that [it] just want[ed] to get on with it," so it "just took the position, look, we'll deal with the protest laws of Ohio."

In *Fox Hills* we reversed the district court's preemption decision with respect to Michigan's and Nevada's dealer laws and held that Section 747 preempts the operation of Michigan and Nevada dealer protest laws. *Fox Hills,* 776 F.3d at 430. However, we explicitly stated that we were not considering whether Section 747 preempts Ohio's state dealer protest laws:

> Fox Hills, Village, Jim Marsh and Livonia all argue in favor of preemption. Because these dealerships are located in Nevada and Michigan, we consider their preemption arguments under the laws of those states. Spitzer, on the other hand, does not challenge the state dealer protest laws in its home state of Ohio, a point conceded by its attorney at oral argument. Accordingly, we do not consider the preemption argument with respect to Ohio state dealer protest laws.

*Id.* at 424 n. 7. We then ordered that the judgment be reversed, and we remanded the case "so that the district court may enter a declaratory judgment consistent with this opinion to the effect that the state dealer protest laws in Michigan and Nevada are preempted." *Id.* at 434.

## II.  The Current Action

Prior to the initiation of the consolidated action, Fred Martin had filed a protest proceeding with the Ohio Motor Vehicles Dealer Board pursuant to Ohio's dealer laws, Ohio Rev. Code § 4517.01 *et seq.*, to stop Chrysler from adding Spitzer as a dealer in Ohio. In the protest proceeding, Spitzer argued that Section 747 preempted the dealer protest law under which the proceeding was initiated, but the consolidated action commenced before the Ohio dealer board could rule on the issue. The Ohio protest proceeding was placed on hold while the consolidated action was underway, and Spitzer agreed that the consolidated action would decide certain issues, one of which was whether Section 747 preempts Ohio's dealer protest laws.

However, after the district court closed the consolidated action when it issued its final judgment on remand after *Fox Hills*, counsel for Spitzer sent a letter to the Chief Administrator of the Ohio Motor Vehicles Dealer Board advising him that Spitzer believed that our decision in *Fox Hills* required that Spitzer's protest proceeding involving Fred Martin and Chrysler be dismissed. Fred Martin responded to Spitzer's letter with a letter of its own, stating that "[t]he Sixth Circuit never determined the issue of pre-emption related to Ohio laws," and therefore "the Michigan District Court's ruling that state dealer laws are not pre-empted stands as to Ohio law." Fred Martin concluded that Spitzer was "barred by the doctrine of *res judicata*" from relitigating the preemption issue before the state dealer board.

The Ohio protest proceeding remained at a standstill, and on April 1, 2016, Chrysler initiated the current action by filing a complaint for declaratory judgment and injunctive relief, seeking: a declaration that the laws of the Ohio Dealer Act remain in full force and effect with respect to Spitzer and the Ohio protest proceeding; an injunction preventing Spitzer from challenging or relitigating the district court's judgment that Section 747 does not preempt the Ohio Dealer Act; and any and all further relief that the Court deemed just and reasonable. Fred Martin was permitted to intervene.

All three parties agreed that the case would be resolved by motions.  Chrysler filed a Motion for Judgment on the Pleadings, Spitzer filed a Motion to Dismiss/Motion for Summary Judgment, and Fred Martin filed its own Motion for Summary Judgment.  The motions were fully briefed, and all three motions were heard by the court on February 2, 2017.  Prior to the February hearing, the district court by order provided specific questions that it intended to ask at the hearing, including whether *res judicata*—an issue not raised in any of the parties' motions— applied.  The court allowed the parties to file supplemental briefs on *res judicata*, and both Chrysler and Spitzer filed supplemental briefs.

In a single order, the district court ruled on the parties' dispositive motions.  First, the court rejected Spitzer's threshold challenges to personal jurisdiction, venue, and standing.[2]  Next, the district court determined that Chrysler was entitled to declaratory relief, concluding that issue preclusion applies here, such that the issue of whether Section 747 preempts the Ohio Dealer Act is "forever settled" as to Chrysler, Spitzer, and Fred Martin.  The district court also held that *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394 (1981), foreclosed Spitzer's fairness and equity arguments against applying collateral estoppel here.  Finally, the district court issued an order enjoining Spitzer from challenging or relitigating whether Ohio's dealer protest laws are preempted by Section 747 before the Ohio dealer board.

### III.  Collateral Estoppel

Notwithstanding Spitzer's arguments on appeal, Spitzer is collaterally estopped from relitigating whether Section 747 preempts the dealer protest laws of Ohio.  All four requirements for collateral estoppel articulated in *Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 589–90 (6th Cir. 2009), are met in this case.  First, the precise issue of whether Section 747 preempts the Ohio Dealer Act was raised and litigated during the consolidated action.  Second, the district

---

[2]The district court also rejected Chrysler's and Fred Martin's arguments for declaratory relief founded on judicial admission, waiver, and law-of-the-case.  The district court reasoned that Spitzer's statements at oral argument in *Fox Hills* did not qualify as a judicial admission because "judicial admissions generally arise only from deliberate voluntarily waivers that expressly concede an alleged fact," but Chrysler asked the court to hold that Spitzer "made a 'judicial admission that the Ohio state dealer law remains in effect as to Fred Martin's protest'— which is a legal conclusion" and "legal conclusions are rarely considered to be binding judicial admissions." *FCA US, LLC v. Spitzer Autoworld Akron, LLC*, No. 16-11186, 2017 WL 512790, at * 11 (E.D. Mich. Feb 8, 2010) (citation and internal quotation marks omitted).  The district court also held that the theories of waiver and law-of-the-case were not applicable because the current action is independent from the earlier consolidated action.

court's preemption decision in the consolidated action with respect to Ohio's dealer laws was necessary to the outcome in that case.  Third, the district court in the consolidated action issued a final judgment on Spitzer's claims as part of its Opinion & Order on March 27, 2012, and on June 26, 2015, it closed the consolidated action entirely when it issued its judgment on remand after *Fox Hills*.  Finally, Spitzer had a full and fair opportunity to litigate the preemption issue before the district court in the consolidated action, and like other similarly situated parties, to appeal the district court's preemption decision.

Spitzer counters that *Fox Hills* represents a significant change in the legal climate with respect to Section 747's preemption of state dealer protest laws, and therefore issue preclusion is not applicable here.  *Montana v. United States* recognized that in some circumstances a significant change in the legal climate can warrant an exception to issue preclusion.  *See* 440 U.S. 147, 161 (1979) (citing *C.I.R. v. Sunnen*, 333 U.S. 591, 599, 606 (1948)).  But *Fox Hills* explicitly refrained from deciding whether Section 747 preempts the Ohio Dealer Act, leaving the district court's judgment on the issue in the consolidated action intact.  *See* 776 F.3d at 424, n. 7.  We have recognized that "should there be a significant change in precedent, cases decided under prior precedent that has been reversed will not have preclusive effects," *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. (UAW) v. Kelsey-Hayes Co.*, 854 F.3d 862, 872 (6th Cir. 2017) rev'd on other grounds, __ S. Ct. __, 2018 WL 1037569 (U.S., Feb. 26, 2018) (citing *Sunnen*, 333 U.S. at 599–600).  But *Fox Hills* did not reverse the district court's holding that Section 747 does not preempt the Ohio state dealer laws.  In fact, *Fox Hills* "d[id] not consider the preemption argument with respect to Ohio state dealer protest laws" because Spitzer did not appeal the issue, 776 F.3d at 424, n.7, and "[i]f an appeal is taken from only part of the judgment, the remaining part is *res judicata*." *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 396 n. 24 (3d Cir. 1994) (citing 1B James Wm. Moore et al., Moore's Federal Practice ¶ 0.404[4.–3], at II–17 (2d ed. 1993)).

In *Fox Hills* we explicitly limited our analysis and holding to the dealer protest laws of Michigan and Nevada.  776 F.3d at 423–30.  We observed that the parties appealing the district court's preemption decision (Fox Hills, Jim Marsh, and Livonia) "are located in Nevada and Michigan, [so] we consider[ed] their preemption arguments under the laws of those states." *Id*.

at 424, n.7.  Our analysis accordingly focused on the Michigan and Nevada statutes, *id.* at 424–26, and our holding and disposition were similarly limited, *id.* at 434.

Moreover, the change-in-law exception to collateral estoppel generally applies where the "change in law" is being applied to new facts, even though those new facts are indistinguishable from the earlier action.  Thus, in *CIR v. Sunnen*, the Supreme Court dealt with collateral estoppel in the context of taxes for succeeding tax years.  *See* 333 U.S. at 593.

> [W]here two cases involve income taxes in different taxable years, collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice.  It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged.

*Id.* at 599–600.  But this case and the consolidated action deal with the *same facts*, not merely recurring indistinguishable facts.  The effect of enforcing collateral estoppel in the instant case should accordingly be the same as if Spitzer had tried to get the same relief in the consolidated action itself.  This Spitzer could not have done.  For instance, Spitzer could not have reopened the issue on remand after *Fox Hills* because, under the doctrine of law-of-the-case, a party that fails to appeal an issue "waive[s] his right to raise the[] issue[] before the district court on remand or before [the Sixth Circuit] on appeal after remand."  *United States v. Adesida*, 129 F. 3d 846, 850 (6th Cir. 1997).  Indeed, "[t]he law-of-the-case doctrine bars challenges to a decision made at a previous stage of litigation which could have been challenged in a prior appeal[] but were not."  *Id.*  This is true even when co-parties successfully appeal on related issues because "[i]t is the generally accepted rule in civil cases that where less than all of the several co-parties appeal from an adverse judgment, a reversal as to the parties appealing does not necessitate or justify a reversal as to the parties not appealing."  *Nat'l Ass'n of Broadcasters v. FCC*, 554 F.2d 1118, 1124 (D.C. Cir. 1976).  In addition, if Spitzer had tried to seek relief under Fed. R. Civ. P. 60(b) it would have been unsuccessful because "[a] Rule 60(b) motion is neither a substitute for, nor a supplement to, an appeal," and "[f]or this reason, arguments that were, or *should have been*, presented on appeal are generally unreviewable on a Rule 60(b)(6) motion."  *GenCorp, Inc. v. Olin Corp.*, 477 F.3d 368, 373 (6th Cir. 2007) (emphasis added).  Even "[i]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances

required for relief under Rule 60(b)." *Agostini v. Felton*, 521 U.S. 203, 239 (1997). Spitzer cannot evade such limits on its ability to challenge the very state proceeding that would have been at issue in the consolidated action and *Fox Hills*, merely because this lawsuit is a new one.

Spitzer argues that it would be inequitable to apply collateral estoppel against it. But it was Spitzer that agreed to stay the Ohio protest proceeding to allow the consolidated action to determine whether Section 747 preempted Ohio's state dealer laws, and it was Spitzer that made the free, calculated, and deliberate choice not to challenge, in an appeal to which it was a party, the district court's unfavorable preemption decision with respect to Ohio's dealer protest laws. At oral argument in this action, counsel for Spitzer conceded that had Spitzer attempted to re-raise the preemption issue on remand in the consolidated action it would have been precluded from doing so because of its failure to raise the issue on appeal. Thus, it is perfectly fair to disallow Spitzer from relitigating whether Section 747 preempts Ohio's dealer laws now before the Ohio dealer board, when Spitzer acknowledges that in the very case in which it agreed to have the preemption issue decided it strategically abandoned the argument.

Spitzer's equitable arguments are further undercut by the Supreme Court's decision in *Federated Dep't Stores, Inc. v. Moitie*. In *Moitie*, seven plaintiffs separately brought claims against the owners of various department stores alleging price fixing in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and the actions were assigned to a single federal judge. 452 U.S. at 395–97. After the district court dismissed all of the actions in their entirety on the ground that the plaintiffs had not alleged an "injury" to their "business or property" within the meaning of Section 4 of the Clayton Act, 15 U.S.C. § 15, the plaintiffs followed two divergent litigation strategies. *Moitie* at 396. Five of the plaintiffs appealed the district court's decision. *Id.* The other two plaintiffs (Moitie and Brown) instead refiled in state court and purported to raise state-law claims, but the defendants successfully removed the claims to the federal district court. *Id.* at 396–97. In ruling on the propriety of removal, the district court held that while Moitie's and Brown's complaints were artfully couched in terms of state law, the new complaints were in many respects identical to the prior federal complaints and raised essentially federal law claims, and therefore, because the new action involved the same parties, the same

alleged offenses, and the same time period, Moitie's and Brown's claims were barred by *res judicata*. *Id.* This time Moitie and Brown appealed. *Id.* at 397.

While Moitie and Brown's appeal was pending, the Supreme Court decided *Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979), which effectively rejected the original district court's reasoning regarding the Clayton Act, and the Ninth Circuit reversed and remanded the five cases that had been decided and appealed in the original action for further proceedings in light of *Reiter*. *Moitie*, 452 U.S. at 397. The Ninth Circuit then reversed in Moitie's and Brown's separate appeal, holding that while a "strict application of the doctrine of *res judicata* would preclude [its] review of the instant decision," "non-appealing parties may benefit from a reversal when their position is closely interwoven with that of appealing parties." *Id.* at 397–98. Therefore, the Ninth Circuit concluded, "'[b]ecause the instant dismissal rested on a case that has been effectively overruled,' the doctrine of *res judicata* must give way to 'public policy' and 'simple justice.'" *Id.* at 398 (alteration in original) (quoting *Moitie v. Federated Dep't Stores, Inc.*, 611 F.2d 1267, 1269–70 (9th Cir. 1980)). The Supreme Court categorically rejected the Ninth Circuit's decision. *See id.* at 398–402.

The Supreme Court observed that there is "no general equitable doctrine . . . which countenances an exception to the finality of a party's failure to appeal merely because his rights are 'closely interwoven' with those of another party." *Id.* at 400. Moreover, *Moitie* rejected the idea that it somehow violates "simple justice" to enforce *res judicata* against nonappealing parties who seek to be the "windfall beneficiaries of an appellate reversal procured by other independent parties, who have no interest in [the nonappealing parties'] case." *See id.* at 400. This reasoning applies particularly when parties "ma[k]e a calculated choice to forgo their appeals," *id.* at 400–01, as Spitzer did here. As in *Moitie*, there is no injustice in applying collateral estoppel against Spitzer, because "[t]he doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case." *Id.* at 401. "Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between parties." *Baldwin v. Traveling Men's Ass'n*, 283 U.S. 522, 525 (1931); *see also Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). Spitzer

agreed to have the consolidated action decide whether Section 747 preempts Ohio's dealer laws, and Spitzer as a party on appeal voluntarily disclaimed the preemption contention after the district court ruled against it. To allow Spitzer to relitigate preemption in the Ohio protest proceeding that was stayed specifically to allow the consolidated action to answer that question would undermine the principles of finality, consistency, fairness, and conservation of judicial resources that are the foundation of collateral estoppel.

Spitzer claims that *Moitie* is distinguishable because it considered claim preclusion rather than collateral estoppel, but both doctrines are founded on common underlying equitable principles. It is "[a] fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, [] that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . . .'" *Montana,* 440 U.S. at 153 (quoting *Southern Pac. R. Co. v. United States*, 168 U.S. 1, 48–49 (1897)). Indeed, "[c]ollateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party . . . and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery*, 439 U.S. at 326. Even assuming for the sake of argument that the district court's decision in the consolidated action with respect to whether Section 747 preempts Ohio's state dealer laws was incorrect, there would still be no inequity in applying collateral estoppel against Spitzer because issue preclusion prevents the relitigation of wrong decisions just as much as right ones. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1308 (2015).

Spitzer's argument that collateral estoppel is not applicable because the preemption issue is a pure question of law also fails. While the Supreme Court has recognized an "exception to the applicability of the principles of collateral estoppel for 'unmixed questions of law,'" that exception only applies to "'successive actions involving *unrelated* subject matter.'" *United States v. Stauffer Chemical Co.*, 464 U.S. 165, 171 (1984) (emphasis added) (quoting *Montana,* 440 U.S. at 162). Thus, "[t]he Supreme Court has severely limited the 'unmixed' question of law exception[,] . . . requir[ing] a determination that the 'issue of law' arises in a successive case that is so unrelated to the prior case that relitigation of the issue is warranted." *United States v.*

*Sandoz Pharm. Corp.*, 894 F.2d 825, 827 (6th Cir. 1990) (internal quotation marks omitted).  But the subject matter at issue in the Ohio protest proceeding, as explained above, is the same as the subject matter previously litigated in the consolidated action.  In fact, Spitzer acknowledges that the protest proceeding was stayed specifically because "[t]he primary purpose of the . . . [consolidated action] was to obtain a clarification of the issues as to whether Section 747 of the Act preempted state dealer protest laws."  As the Supreme Court reasoned, even with respect to government litigation, while the purpose underlying the exception for "unmixed questions of law" in successive actions on unrelated claims is far from clear, "whatever its purpose, we think that there is no reason to apply it here to allow the government to litigate twice with *the same party an issue arising in both cases from virtually identical facts*."  *Stauffer*, 464 U.S. at 172 (emphasis added).

Spitzer's final argument for finding collateral estoppel inapplicable—that *Fox Hills'* reversal with respect to Michigan's and Nevada's dealer laws had the effect of also vacating the district court's judgment with respect to Ohio's dealer laws—is without merit, because a partial reversal of a judgment generally does not vacate or void the entire judgment.  As previously discussed, *Fox Hills* explicitly did not consider Ohio's dealer laws, and we carefully crafted our disposition to only affect the district court's preemption decision with respect to Michigan's and Nevada's dealer laws.  Moreover, it is well established that "[i]f an appeal is taken from only part of the judgment, the remaining part is *res judicata*, and the vacation of the portion appealed from and remand of the case for further proceedings does not revive the trial court jurisdiction of the unappealed portion of the judgment."  *Foster Wheeler Energy*, 26 F.3d at 396 n. 24 (citation omitted).

Spitzer, however, claims that *Erebia v. Chrysler Plastic Prods. Corp.* announced a contrary rule when we held that "[w]here the prior judgment, or any part thereof, relied upon by a subsequent court has been reversed, the defense of collateral estoppel evaporates."  891 F.2d 1212, 1215 (6th Cir. 1989).  But Spitzer misreads *Erebia*'s holding.  *Erebia* did not say that a partial reversal robbed the entire judgment of preclusive effect, only that the part of the prior judgment that has been reversed cannot support collateral estoppel.  Indeed, *Erebia* explained that "[w]hen a judgment has been subjected to appellate review, the appellate court's disposition

of the judgment generally provides the key to its continued force as res judicata and collateral estoppel." *Id.* Thus, *Fox Hills'* disposition—"[W]e REVERSE and REMAND . . . so that the district court may enter a declaratory judgment consistent with this opinion to the effect that the state dealer protest laws in *Michigan* and *Nevada* are preempted," 776 F.3d at 434 (emphasis added)—meant that the portion of the district court's judgment with respect to Michigan's and Nevada's dealer laws had lost its preclusive effect, while the portion of the prior judgment with respect to Ohio's dealer laws remained intact.

### IV. *Younger* Abstention

Finally, the district court's injunction does not violate *Younger v. Harris* and its progeny, because the Ohio administrative proceeding between Chrysler, Fred Martin, and Spitzer does not fall within any of the "exceptional" circumstances that warrant *Younger* abstention in civil cases. "*Younger* abstention derives from a desire to prevent federal courts from interfering with the functions of state criminal prosecutions and to preserve equity and comity." *Doe v. Univ. of Ky.*, 860 F.3d 365, 368 (6th Cir 2017). But while we have recognized that "*Younger* abstention can apply to cases that are not criminal prosecutions[,] . . . such applications are narrow and exist only in a few exceptional circumstances." *Id.* at 369.

> [F]irst, *Younger* permits abstention when there is an ongoing state criminal prosecution. Next, *Younger* precludes federal involvement in certain civil enforcement proceedings . . . that 'are akin to criminal prosecutions.' Finally, *Younger* pertains to 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions,' such as contempt orders.

*Id.* (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989) and *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013)).

None of these exceptional circumstances is present here. First, the Ohio administrative proceeding is clearly not a state prosecution. Next, the Ohio administrative proceeding is not a civil enforcement proceeding, and, even if it was, it is certainly not "akin to a criminal prosecution." Finally, the Ohio administrative proceeding is not a state civil proceeding involving an order that is uniquely in furtherance of a state's ability to perform its judicial function. The Ohio administrative proceeding has no relation to civil contempt orders, state rules

for posting bond pending appeal, or any other orders that are uniquely in furtherance of the judicial function of the Ohio courts. *See Sprint Commc'ns, Inc.*, 134 S. Ct. at 592 (citing *Juidice v. Vail*, 430 U.S. 327, 336 n. 12, (1977); *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 13 (1987)).

V.

The judgment of the district court is affirmed.